No. 15.—EDWARD CAREY, assignee, &c. plaintiff in error, *vs.* DANIEL McDOUGALD, defendant.

[1.] The following paper, held by the Court to be negotiable, and the indorser liable, according to the *law merchant*, on his indorsement thereon:

"PLANTERS' & MECHANICS' BANK OF COLUMBUS, Ga. Jan. 29, 1842. "$3,987 74.

" Gen. James C. Watson has deposited in this bank three thousand nine hundred and eighty-seven 74-100 dollars, which sum said bank will pay to him, or his order on this certificate, on the first day of January next. [Signed,]                                        M. ROBERTSON, Cashier. Indorsed, J. C. Watson, D. McDougald, M. Robertson."

[2.] The Act of 1837, making it penal in a bank to put any instrument in circulation, payable at a longer date than three days, applies to *post notes* only.

[3.] The provision to be found in the various bank charters of this State, requiring all contracts whatever, to be signed by the President, and countersigned by the Cashier, in order to bind the company, does not apply to such dealings and transactions as are usually and necessarily performed by the Cashier, or some other duly authorized agent of the institution.

Assumpsit, &c. in Muscogee Superior Court. Decided by Judge ALEXANDER, May Term, 1849.

Edward Carey, as the assignee of the Bank of Columbus, brought suit against Daniel McDougald, as indorser upon the following instrument:

"PLANTERS' & MECHANICS' BANK, Columbus, Ga. Jan. 29, 1842. " $3,987 74.

" Gen. James C. Watson has deposited in this bank three thousand nine hundred and eighty-seven 74-100 dollars, which sum said bank will pay to him, or his order on this certificate, on the first day of January next. [Signed,]                               M. ROBERTSON, Cashier. " Indorsed, J. C. Watson, D. McDougald, M. Robertson."

The defendant's counsel demurred to plaintiff's declaration, on the ground that the instrument declared on was not negotiable by indorsement, and that the defendant, therefore, was not liable on his alleged indorsement.

The Court sustained the demurrer and dismissed the action,

and this decision has been brought before this Court to be reviewed.

W. Dougherty, for plaintiff in error.

H. L. Benning, for defendant.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] The single question in this case is, whether or not the instrument sued on be a negotiable paper? And we know of no better method of determining its character and qualities, than by subjecting it to the tests which have been furnished by standard authors upon the subject. Mr. *Chitty*, in his great work on bills, says, that no formal set of words are essential to the validity of a promissory note or bill of exchange; that it is sufficient, if it amount to a promise to pay money. (*p.* 524.) He furnishes, from the reported cases, a number of illustrations in support of the proposition in the text. I will cite a few of them. A note, promising to account with another or his order, for a certain sum, value received, is a valid note, though it contain no promise to pay. So, where the note, set forth in the declaration, was, " I acknowledge myself indebted to A, £——, to be paid on demand, for value received," was held to be good on demurrer. So, where a note was in this form, " I do acknowledge that Sir A C has delivered to me all the bonds and notes, for which £400 were paid to him on account of Col. S; and that Sir A delivered to me Major G's receipt and bill on me for £10, which £10 and £15 5*s.* a balance due to Sir A, I am still indebted and do promise to pay." On demurrer, the note was adjudged to be good. So, a note in this form : " December, 1814, received of Messrs. D & C, £100, which I promise to pay on demand, with lawful interest," is a good note. *Ib.*

The paper sued on is in these words :

" Planters' & Mechanics' Bank, Columbus, Ga. Jan. 29, 1842.
" $3,987 74.

" Gen. James C. Watson has deposited in this bank, three thousand nine hundred and eighty-seven 74-100 dollars, which

sum said bank will pay to him, or his order on this certificate, on the first day of January next.

　　[Signed,]　　　　　　　M. ROBERTSON, Cashier.

"Indorsed, J. C. Watson, D. McDougald, M. Robertson."

We are unable to draw any distinction between the instrument before us, and those cited in the precedents, especially the two last. In view of the authorities then, we are of the opinion that this paper is negotiable, and, consequently, that the indorsement is sufficient to charge Daniel McDougald, the defendant.

It is argued, however, that the indorsement is void, because the note itself is a nullity as against the Planters' & Mechanics' Bank. This may be true, and still it does not answer the question made in the bill of exceptions. If the note be good as against *M. Robertson,* the indorsement is sufficient to bind Mc-Dougald. If it was intended to be relied upon that this was not the note of the bank, but of the maker individually, the evidence should have been objected to as not supporting the averment in the declaration, which alleges it to be the note of the corporation.

But, admitting the case argued to be made by the pleadings, we maintain that this is the note of the bank. It is impugned on two grounds:

1st. Because, by the charter of the Planters' & Mechanics' Bank, "The bills obligatory of the company, notes and *all other contracts whatever,* in behalf of said institution, are binding only provided the same be signed by the President, and countersigned by the Cashier of said corporation." *Prince,* 127.

[2.] 2dly. Because, by the Act of 1837, it is made unlawful for any bank, or any officer thereof, to issue or circulate any note, &c. which shall be payable at a greater length of time, or a longer date than three days after the date thereof; and a penalty of one thousand dollars is imposed for every violation of the provisions of said Statute. *Hotchkiss,* 358.

Although somewhat of a literalist in the interpretation of laws, I feel constrained to deviate in the present instance. The history of this Act is too fresh in the memory of all, not to know its object and meaning. It was designed to prevent the issuing and circulation of *post notes.* And as is not unfrequent with the Legislature, they exhaust the whole vocabulary of words applicable to every species of instrument, lest the true intent of the Act

should be evaded. Mr. Hotchkiss, in his Digest, heads this section, " *Banks shall not issue post notes;*" and the Legislature adopted this construction, by approving of the " *correctness* and *fidelity*" of the work.

A striking instance of this mode of interpreting Statutes, is furnished in the decisions of the Supreme Court of the United States, upon that clause of the Constitution which declares, that " no State shall emit bills of credit." The uniform language held by that tribunal is, that while in its enlarged and perhaps literal sense, the term " bills of credit," may comprehend any instrument by which a State engages to pay money at a future day, thus including a certificate given for money borrowed, yet this inhibition of the Constitution applies to bills of credit in a limited sense; and that in order to restrict the interpretation of the term, recourse will be had to the history of this description of paper denominated *bills of credit,* and used to answer the purposes of circulation, before the adoption of the Constitution, in order to ascertain the mischief intended to be prevented. *Craig et al. vs. The State of Missouri,* 4 *Peters,* 431. *Briscoe et al. vs. The Bank of the Commonwealth of Kentucky,* 11 *Peters,* 258.

[3.] And upon the other objection, founded upon the charter, I do not know that we could do better here, than to repeat what was said by the Court, upon the same point, in the case of the *Merchants' Bank of Macon vs. the Central Bank of Georgia,* 1 *Kelly,* 418. That case was ably argued upon the authorities, and deliberately decided, after the most mature consideration; and although it has come up, incidentally, for review several times since, we have not felt it to be our duty to reverse or modify the opinion there expressed, which was, that this provision—that all contracts, whatever, in order to charge the company, must be signed by the President and countersigned by the Cashier, and which is found in most of the bank charters in this State—does not apply " to such contracts or engagements as occur in or are necessary to the ordinary business of the corporation usually performed by the Cashier, or some other officer or agent of the bank, such as drawing or indorsing bills of exchange, checks, drafts," &c.

To put the construction upon this provision, which is contended for, would put an end to all banking in Georgia. For the sweeping phraseology, *all contracts whatever* includes implied as well as express contracts. The banks in this State have never put

this interpretation upon their own powers. It has never been done by the commercial community; nor indeed, by any one else. We are constrained, therefore, to conclude, that when the Legislature created the numerous bank charters in this State, they intended them, *bona fide*, to transact the ordinary business of banking, and that they clothed them with the usual privileges and powers for this purpose; and that they were not guilty of the absurdity and injustice of creating corporations, and in the same Act, to impose limitations and restrictions, which if carried out to the letter, would render them utterly powerless and inefficient. On the contrary, they intended, we doubt not, this prohibitory clause to apply to such contracts only, as are not ordinarily and necessarily connected with the duties, and intrusted to the exclusive management of the Cashier, or some other authorised agent of the bank.

We are of the opinion, therefore, that the Court erred in sustaining the demurrer, and its judgment is reversed and the cause remanded.