JANE FRANK *et al.*, plaintiffs in error, *vs.* LONGSTREET, SEDGWICK & COMPANY, defendants in error.

1. An irregularity in a second original is not fatal to the suit if the party has had notice. (R.)
2. Where the payee of a note indorses it after maturity, and suit is brought by the indorsee against the makers and indorser, and the plea by the makers sets up usury, and the Judge held such plea by the makers did not affect the liability of the indorser upon his contract of indorsement after maturity of the paper :

*Held,* That this was not error. The contract of indorsement was a new and distinct contract, not affected by usury between the payee and makers in the hands of the indorsee without notice, and the indorser, in a suit against him by the indorsee, cannot set up his own illegal act in taking usury, to defeat a recovery against himself as indorser.

3. On a note made to be negotiated at a chartered bank, but not so negotiated and held by the payee at its maturity, and indorsed with a waiver of demand and notice by the security, and after its maturity indorsed by the payee, under our law, under 2739th section of the Code, such indorser after maturity, upon suit by the indorsee, is not discharged by failure of proof of "demand and notice," and it was not error in the Court to refuse a non-suit on this ground.

4. In order to render verbal evidence of the contents of the notice required by our law to be in writing and to contain certain facts, even when such notice is out of the jurisdiction of the Court, it is first necessary to give notice to the party or his attorney to produce it.

Frank *et al. vs.* Longstreet, Sedgwick & Company.

5. When the evidence shows that the maker of a note borrowed $2,400 from the payee, and gave three notes of $1,136 each therefor, and paid two of the notes, and the payee indorsed the last note to a third party, in the hands of the third party, the note is only void to the amount of usury thereon, and it is not within the purview of the defense of the maker to such note, to set up usury paid upon the other notes to the holder and payee thereof.

8. The evidence being that only $800 was received upon the note due at twelve months for $1,136, and $721 82 was paid at maturity, the difference between $800 and legal interest for one year, the lawful principal of the note and the payment, is the amount due, with interest, by the maker to the indorser; and we hold that the verdict is in excess of the amount due, under the evidence, and ought to have been for $134 18, principal, with interest from 15th January, 1868, and direct that the verdict conform to this amount, else a new trial be granted to Jane Frank, the principal, and M. Frank, the security.

7. *Held, again,* Under our Code juries may find equitable verdicts, and the verdict against Guild, the indorser upon the note sued, should stand affirmed.

Usury. Pleadings. Verdicts. Evidence. Before Judge Hopkins. Fulton Superior Court. October Term, 1871.

Longstreet, Sedgwick & Company averred that "Jane Frank, as principal, and Moses Frank, as security, both of said (Fulton) county, and Lewis A. Guild, of the county of Calhoun, as indorser," owed them $1,136 00, besides interest upon a note payable to Guild, hereinafter described. Second original issued for Guild. In it "both of said county," *supra* was left out. All three were served. The Franks pleaded the general issue; that at the time of making said note, it was agreed with them that Guild should lend to Jane Frank $2,400 00, upon her making, with Moses Frank, as security, her three promissory notes of that date, each for $1,136 00, due twelve months thereafter, with interest from date, if not punctually paid within ten days after maturity, thus making the agreed interest at the rate of three and a half per cent. per month; and pursuant to said agreement Guild loaned her $2,400 00, and she made such three notes. This is one of the three. On the 25th of January, 1868, she

paid Guild $1,000 00 in cash and $860 00 in merchandise; on the 12th of November, 1868, she paid him $220 20 cash and $179 80 in merchandise, on said loan. One of the notes was paid at maturity, on the 15th of January, 1868, and they paid on that day, as usury, over principal and interest, $280 00. The note sued on contained but $800 00 of legal principal. This they set up as usury, and prayed a judgment against Guild therefor.

Guild pleaded the general issue; that he was discharged because he gave plaintiffs written notice to sue the maker within three months, and they did not do so; that they took said note by his indorsement after it was due, in exchange for certain notes on Mitchell & Company, plaintiffs guaranteeing that Mitchell & Company would never become bankrupt; but they did, and are discharged as bankrupts, and, therefore, the consideration of said indorsement failed.

On the trial, plaintiffs read in evidence said note, and closed. It was as follows: "$1,136 00. Atlanta, January 12th, 1867. Twelve months after date I promise to pay to the order of Lewis A. Guild eleven hundred and thirty-six dollars, at the Atlanta National Bank, and to bear interest from date, if not punctually paid within ten days after maturity, for value received.        JANE FRANK.

M. FRANK, Sec'y."

Indorsed as follows: "Lewis A. Guild:" "I hereby waive notice and demand, and my liability remains on the within note the same as if it had been duly presented. January 15th, 1868. M. Frank, security." "Received, January 15th, 1868, on the within note, seven hundred and twenty-one and 82-100 dollars."

Defendants' counsel moved for a non-suit because the second original showed no jurisdiction in Fulton county, but averred that all the defendants resided in Calhoun county, and because there was no evidence of demand of payment of said note at said bank, and of notice of non-payment. The non-suit was refused.

Frank *et al. vs.* Longstreet, Sedgwick & Company.

Mrs. Frank testified to the making of the notes as pleaded, and the payments as pleaded, except that she said she also paid Guild $425 00 on the 16th of November, 1869, and that she took up the other two notes from Guild.

Guild testified that he indorsed said note to plaintiffs after due, in exchange for two notes on Mitchell & Company, with the guaranty that they were not bankrupt, and that Mitchell & Company did become bankrupt without paying him. He further testified that he gave notice to plaintiffs' agent to sue said note, and that he did not do so within three months. The plaintiffs lived in New York, and Guild testified that he wrote giving such notice, and proposed to tell the contents of that letter. The Court would not hear him. Another witness said he knew Mrs. Frank paid Guild $400 00, but did not say when nor where. Plaintiffs' agent testified that Guild gave him for the Mitchell & Company notes $100 00 cash, a note on Cowart & Bell for $400 00, and the note sued on, saying they were good, and that the Frank note was secured by mortgage. He took the Mitchell & Company notes at forty-two cents on the dollar, without any guaranty; he knew but little about their solvency except what Guild said. On cross-examination, he said he had no notice to sue except by a letter exhibited, and it was within three months from the beginning of this suit. Another witness testified that the agent did not make any guaranty to Guild as to the Mitchell & Company notes, that Guild knew they were then bankrupt, and was buying up their paper on speculation.

The Court charged the jury, among other things, that as between the makers of the note and plaintiffs there could be no recovery for whatever usury the proof might show to be in the note; but as between the indorser and plaintiffs they could recover (if allowable on other grounds) to the extent of the amount apparently due on the note at the date of his indorsement of it to the plaintiffs.

The jury found against the Franks for $345 66 principal,

and $48 39 interest, and against Guild for $493 70 principal, and $97 91 interest; payment of the sums found against the Franks to operate *pro tanto* as satisfaction of the amount found against Guild, and when the amounts found against Guild are paid they will operate as satisfaction of the sum found against the Franks.

Defendants' counsel moved for a new trial upon the grounds that the Court erred on said refusal of non-suit, in not allowing Guild to show the contents of the notice to sue, and in charging as he did; and because the verdict was contrary to the weight of evidence, and is illegal and uncertain. The Court refused a new trial, and that is assigned as error.

M. ARNOLD & R. J. COWART, for plaintiffs in error. Usury vitiates the note both as to maker and indorser: Ch. on B., (11th ed.) 218 and note (*m*); 1st Kelly's R., 406–409; 2 McCord's R., 176; 3d Wend. R., 141. Parol as to notice was admissible because when instrument to be proven is a notice, it need not be produced: 1st Gr. Ev., sec. 561; 2 McCord's R., 134; 2d C., M. & R. Exch. R., 261. And so when paper is beyond jurisdiction: 26th Ga. R., 544; 39th, 241. Appearance and pleading did not waive irregularity in second original: R. Code, secs. 3265, 3259. Guild not liable because no demand at bank: Ch. on B., 358; 9th Ga. R., 303; 14th, 791; 18th, 517; 2 McCord's R., 350; Cons. Ct. So. Ca., vol. 1, page 69; 9th Johnson's R., 12; 3d Wend. R., 79. The verdict was wrong under the evidence.

HILLYER & BROTHER, for defendants. Usury in note cannot affect one who indorsed it after due, under new contract: 1st Par. on Con., 245, 263; Code, secs. 2593, 2609, 2736. No demand on past due paper necessary: R. Code, sec. 2739. Irregularity in second original was mistake of Clerk, and cured by pleading: R. Code, secs. 3456, 3259, 3269, 3409. The notice to sue proposed to be proved immaterial: R. Code, sec. 2128.

Frank *et al. vs.* Longstreet, Sedgwick & Company.

LOCHRANE, Chief Justice.

The facts in this record show substantially that Lewis A. Guild had a promissory note, dated January 12th, 1867, due twelve months after date, at the Atlanta National Bank, for $1,136 00, made payable to him by Jane Frank and M. Frank, as security; that this note was not deposited at the bank for collection, but was in the hands of the payee after it became due, M. Frank, the security, making the proper waiver in writing, in relation to demand and notice, etc. After the note was due, Guild indorsed it and delivered it to the agent of Longstreet, Sedgwick & Company, in trade. These indorsers brought suit upon the note against the makers, in the county of Fulton, and, by second original, upon Guild, in the county of Calhoun.

1. We may here dispose of a question raised in this record upon the irregularity allged to exist in the second original. The declaration filed against Jane and Moses Frank, shows that they both reside in Fulton county, and avers Lewis A. Guild to be a resident of the county of Calhoun. In the second original, the venue is properly stated: Georgia, Fulton county; but omits to recite that Jane Frank and Moses Frank are of Fulton county—but after their names, adds: "And Lewis A. Guild, of the county of Calhoun, as indorser,' etc. This omission is argued to be a fatal variance, etc. We see nothing in this objection. Section 3269, declares: "No technical or formal objections shall invalidate any petition or process; but if the same substantially conforms to the requisitions of this Code, and the defendant has had notice of the pendency of the cause, all other objections shall be disregarded; provided there is a legal cause of action set forth, as required by this Code." In this case, the parties appeared and pleaded to the action. The maker and security set up usury and payment, and Guild pleaded that he indorsed the note after its maturity, that he gave notice to the parties to institute suit within three months, which they

failed to do, etc., and also failure of consideration in the property received in lieu of such note and obligation of indorsement, etc.   After evidence was introduced, the jury found for the plaintiffs, and a motion for a new trial was made upon several grounds, viz.:   1st. That the Court erred in instructing the jury that the indorser was liable, even if the note was for usury, for the amount of the note.   2d. In not granting a non-suit as to the indorser, upon the ground that the note was payable at a chartered bank, and there was no evidence of a demand and notice upon the makers, etc.   3d. In excluding Guild's testimony, proving notice to sue, the plaintiffs being residents of New York.   4th. That the verdict was contrary to evidence.   5th. Upon the form of the verdict, which was for $345 66, principal, against the maker and surety, and for $493 70, principal, against the indorser.

2. We will first notice the liability of the indorser.   The proposition relied on is, that the usury vitiated the note, both as to the makers and indorser.   Is this the law?   We think not.   The indorser, by his contract, for a consideration, undertook to pay the note, if the makers did not.   And conceding that he had taken this note for usury, he could not set up that to defeat the recovery as against him.   In Marford *vs.* Davis, 28th New York, (1st Tiffany,) 481, it is laid down, " An indorsement, as between the indorser and indorsee, is a new and independent contract, having no connection with a usurious contract between the payee and the person discounting it, and is unaffected by it.   And it is not competent for the indorser to say that his indorsement is invalid, nor can he, in any event, set up his own illegal act in taking usury, to defeat a recovery against him upon the same instrument."

In Brown *vs.* Wilcox, 15th Iowa, (7th With.,) 414, on a note given for usury, it was held that the indorser was liable to the indorsee, where he could not maintain an action against the maker.   In Mabry *vs.* Matthews, 10th S. & M., 323, it

was held, "Where one knowingly indorses a note, after it has been paid off, he binds himself by such indorsement, and is liable for the amount of the note to the indorsee." In the case in 1st *Kelly*, 406, the principle held does not conflict with the position presented by these cases. As to the maker, after dishonor, the indorser takes the note with all the existing equities growing out of the contract as a defense. But this rule does not apply to the indorsee; he guaranteed the validity of the paper, and is bound upon his contract of indorsement to the indorsee. The indorsement was a new contract: 2d *Kelly*, 167, *Cox vs. Adams.* And we, therefore, hold there was no error in the charge of the Judge, that the indorsee was liable to the indorser upon his contract, even if the note was tainted with *usury* or for *usury*, and such defense availed the makers.

3. The second ground of error is based on the failure of proof, that demand and *notice* upon the maker and security had been made. We recognize the general rule to be, that, though a note is past due, and indorsed by the payee, it is nevertheless incumbent upon the holder to make demand upon the makers, and give notice of their failure to the indorser; the rule is briefly stated in Guild *vs.* Goldsmith, 9 Florida, 212: "An indorsee of a promissory note after it falls due cannot recover from the indorser without proof of demand and notice." The same principle may be found in Patterson *vs.* Todd, 18 Tennessee, 426: "The indorsee of an over due, negotiable note is not liable thereon, unless it should be presented to the maker within a reasonable time after its transfer, and notice of non-payment be given to the indorser." In *Hoadly vs. Bliss,* 9 *Georgia Reports,* 303, this Court held that the indorser could waive notice and demand before maturity, but after maturity he may waive *proof* of demand and notice. In 14 Georgia Reports proof of demand and notice was held necessary to bind the indorser, and in 18 Georgia Reports, 518, Judge Lyon says: "it is an indispensable part of the plaintiff's case; without proof of demand

and notice he is not entitled to recover." The cases decided arise under the Act of 1826, and the proposition will not be gainsayed, that as to a note made for the purpose of negotiation, or intended to be negotiated at any chartered bank, and not paid at maturity, notice of the non-payment thereof, and of the protest of the same for non-payment must be given to the indorsers thereon within a reasonable time, or he will not be liable thereon. This is the Code, section 2739. But the question is, conceding that an indorser, after maturity, was entitled to demand and notice, how far binding, under the facts of this case, is the language of our law in section 2739, which concludes, after reciting what is before stated as to notice of non-payment at maturity, etc., " but in no other case and upon no other bills or notes shall notice or protest be held necessary to charge the indorser." Now, in this case the note was upon its face payable at a bank ; the proof is, it was made to be negotiated there. But it was not paid at maturity, and the payee did not present it, but took the waiver of demand and notice by the security, when he indorsed this note, after due and dishonored, in his own hand. Is it within the legitimate inferences of the law that he was to have notice within the section of the Code, 2739, before he was liable on such contract of indorsement ? Whatever the failure upon the part of the indorsee to sue, within reasonable time, the makers of the note might work to a discharge of the indorser, we do not think that failure to make demand or give notice to him can so result. This case is peculiar in the fact that the note, though made to be negotiated at a chartered bank, was not so negotiated, but remained in the hands of the payee. It was not paid at maturity, and the waiver of the security of demand and notice of the failure to pay at maturity is entered upon it. We are of opinion that the language of the Code, " that in no other case shall notice be necessary to charge the indorser," left this case out of the common law principle, and renders it unnecessary to have given him the notice, and we therefore affirm the judgment upon this ground.

Frank *et al.* *vs.* Longstreet, Sedgwick & Company.

4. In the error complained of relative to the exclusion of Guild's proving the fact of notice to sue within three months, we do not think it was error in the Court to have refused the proof. This Court, in 26th *Georgia Reports* 537, have held " when a writing is beyond the jurisdiction of the Court verbal evidence of its contents is admissible;" and in 39th *Georgia Reports,* 242, this Court again said : "The contents of a paper beyond the jurisdiction of the Court, and not in the power of the party wishing to use it, may, without doubt, be proven by a proven copy." But there must be, to let in such testimony, proof, first, that such *notice* or writing was actually served upon the party. *Contents of letters* addressed to them, or sent, without proof of delivery or receipt by the party, would be insufficient. The notice here said to have been given, was under a statute or section of the Code 2128. It may be served upon the creditor, his agent, or person having possession of or controlling the obligation. But the fact of service actually made must precede any proof of the contents of the notice said to be served. And we hold that before evidence could be given of the contents of such written notice required by the statute, it was necessary to serve the party or his attorney with notice to produce the notice, and upon failurethen verbal evidence of its contents is admissible.

5. We now come to that part of the case in which we find more difficulty in arriving at a correct conclusion. Was the verdict contrary to the evidence ? Mrs. Frank says she borrowed money of Guild ; the amount was $2,400 00 at $3\frac{1}{2}$ per cent. per month ; three notes were given of $1,136 00 each, at twelve months each. She further says she has paid two of the notes. She then details the amounts paid, aggregating over the amount of $2,400 00 and legal interest. She says the note sued on is all usury. She also says she has paid $724 00 on this note sued on.

It is evident in the evidence of Mrs. Frank, that she regards the transaction as an entirety, and reasons or rather answers for the reason that, as the original amount was

$2,400 00, and she has paid this with legal interest, this note sued on is all usury. But the law does not calculate in this way. In Primrose *vs.* Anderson, 24th Pennsylvania State Reports, (12th Harris,) 215, the law is correctly laid down. "The taking of usurious interest upon one negotiable promissory note cannot be set up in defense to an action upon another such note held by the same person." These notes were neither all usury upon her statement, but each contained *as usury* the amount over the principal and legal interest—thus $800 00 received would bear interest for twelve months, if due at that time. This would make $856 00. The amount of the note sued on is $1,136 00. The balance, or $280 00, would be usury. If she paid the sum of $724 82 on the note when due, then the balance due would be $134 18, and that, *plus* interest thereon since that time, would be her indebtedness; which, by calculation, would show that the verdict as against Mrs. Frank and Mr. Frank was for too large an amount, or an amount not warranted by the evidence, as between her and the plaintiffs. She was entitled to all equities of defense to the note sued on. What usury she may have paid to Guild does not come into her right of equities as between her and the plaintiffs; she is confined to the note and the transactions growing out of the note.