Cohen & Prater.

---

M. A. COHEN, plaintiff in error, *vs.* JOSEPH PRATER, defendant in error.

The indorsee of a note containing no negotiable words, is chargeable with notice of all defects in the consideration, although he takes it before due and for value.  The negotiable paper which is not subject to such a defense, in the hands of a *bona fide* indorsee, is paper which the parties

render negotiable as a part of their express contract, and not such as, wanting negotiable words, the statute alone renders negotiable for the purpose of passing the legal title and enabling the indorsee or assignee to sue in his own name.

Promissory notes. Indorsement. Notice. Before Judge RICE. Hall Superior Court. September Term, 1875.

Reported in the opinion.

ESTES & BOYD; W. U. GARRARD, for plaintiff in error.

J. F. LANGSTON, for defendant.

BLECKLEY, Judge.

Is a note containing no negotiable words, transferred by indorsement before due, the indorsee paying value and having no actual notice of any defect in the consideration, subject, in his hands, to the defense of failure of consideration? This was the only question argued, counsel waiving all others presented by the record.

It is conceded that prior to the Code, negotiable words in the paper itself were necessary, even to enable the indorsee to sue in his own name: 1 *Kelly*, 77, 237. The Code, it is contended, altered this rule of law, not only so far as to make the indorsement or assignment pass title, but pass it free from all defenses that could not be set up against negotiable paper proper. All the sections of the Code supposed to bear in anywise on the subject will now be examined. Section 2244 declares: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." This plainly alters the prior law as to passing title: See 44 *Georgia Reports*, 636; but not necessarily any further, because the words, "negotiable securities," as here used, may be used in the restricted sense in which they were employed prior to the Code. The presumption is that way: 34 *Geor-*

*gia Reports*, 249 ; 47 *Ibid.*, 679; 42 *Ibid.*, 596. Section 2639 declares: "The *bona fide* purchaser of a negotiable paper not dishonored, will be protected in his title, though the seller has none." There is no change here. This was the law before, (See 2 *Kelly*, 92; 22 *Georgia Reports*, 246 ; 25 *Ibid.*, 546,) and the spirit and reason of the section will harmonize rather better with the old meaning of "negotiable paper" than with the new meaning supposed to be introduced by the Code. Section 2773, which is under the head of "negotiable instruments, and how transferred," defines a bill of exchange; and the next section, which is under the same head, defines a promissory note.

Both these definitions, it will be seen, as if the codifiers kept in mind the heading of the article, apply to negotiable bills and notes proper; that is, bills and notes with operative negotiable words in the instruments themselves. Here are the definitions: "A bill of exchange is an order by one person, called the drawer or maker, to another, called the drawee or acceptor, to pay money to another, (who may be the drawer himself,) called the payee, or his order, or to the bearer." "A promissory note is a written promise made by one or more to pay to another, or order, or bearer, at a specified time, a specific amount of money, or other articles of value." The next section, 2775, is in these words: "A promissory note is negotiable by indorsement of the payee or holder; or, if payable to bearer, by transfer and delivery only. The maker may restrain the negotiability thereof by expressing such intention in the body of the instrument." Both these provisions have been law ever since 1799, as will be seen by referring to 1 *Kelly*, 237, cited above, if we construe a negotiable promissory note to be such a note as has just been defined in the preceding section, that is, one payable "to another, or order, or bearer." It is no late thing for such notes to be transferable in the precise manner here laid down; and the act of 1799 allowed the very same restraint on negotiability, by express declaration of intention, which is allowed here and in section 2777.

Cohen *vs.* Prater.

The model of negotiable paper is thus given us in negotiable bills and notes; and the manner of negotiating notes is prescribed. In all this we discover no departure from the old law. There is certainly no express change in the old law as to what *bills of exchange* are negotiable, or how they are to be negotiated. The section which defines a bill (sec. 2773,) after completing the definition, adds: "If the payee or a bearer transfer the bill by indorsement, he then becomes the indorser." This is all which the Code anywhere says about negotiating bills of exchange, except in grouping them with promissory notes, in section 2776, which section is an important one in this discussion, and reads as follows: "All bonds, specialties, or other contracts in writing for the payment of money, or any article of property, and all judgments and executions from any court in this state, are negotiable by indorsement or written assignment, in the same manner as bills of exchange and promissory notes. No indorsement or assignment need be under seal." The words, "in the same manner as bills of exchange and promissory notes," are suggestive of a standard of negotiability dependent on negotiable words in the instrument. The note pronounced negotiable is of that character, consequently the bond, the specialty, or other contract in writing, ought to be so too. This view harmonizes with the construction placed in 1 *Kelly*, 237, on the kindred words used in the act of 1799. It is, however, embarrassed by the presence in this section of judgments and executions, which are always without negotiable words; but, while we feel the embarrassment, we think it a much lighter one than would be encountered by holding that a section adhering so closely to the act of 1799 was intended to carry a meaning so opposite to what had early been declared by this court as the true construction of that act. If the Code had meant to destroy all distinction between paper payable to A or order, and paper payable to A simply, why did it not do so in express terms? As to judgments and executions, though they are called negotiable in this section, it certainly cannot be in any sense which raises them to any dignity higher than that

Cohen *vs.* Prater.

which they before emjoyed.   They are still subject to all prior equities: Code, section 3597.   Sections 2785 to 2789, inclusive, touching the rights of holders, will, on comparison with the old law, be found to be free from novelty.   The entire article may be read without any new sense of the phrase, "negotiable instruments," being called for or thought of.

Only one more section seems sufficiently pertinent to demand consideration, and that is section 3471, which limits pleas of total or of partial failure of consideration to cases "between the original parties to the contract, or their privies or assignees, whose title has been acquired with notice, actual or constructive, or by operation of law."   This section is in accord with section 2244 and with the long recognized law, if all purchasers of paper not in terms negotiable, are held to buy at their peril, and to be chargeable constructively with notice of any and all defects and equities that originate prior to their purchase.   The want of negotiable words on the face of the paper, should put purchasers on inquiry, and if they fail to discover defenses that exist, it is their own misfortune.

Our conclusion is, that title may pass under the Code which could not pass before, and in that loose sense, there may be now a class of negotiable paper which before was not called negotiable in any sense; that, however, the strict and proper sense of negotiable paper, is paper containing within itself operative words of transfer, the same character of paper called negotiable before the adoption of the Code; and that the law of defense, in respect to failure of consideration, etc., is, in substance, the same now as it was aforetime.   There is some indication of an opposite view in the reasoning of Judge Mc-CAY, in 50 *Georgia Reports,* 109; but as the note in that case contained negotiable words, that part of his reasoning was not necessary to the judgment of the court.   Such a note would carry with it a mortgage given to secure it, as is shown by the authorities which he cites.

Judgment affirmed.