## LYNCH *vs.* GOLDSMITH.

1. An instrument in the following terms: "Atlanta, Ga., February 11th, 1873. This is to certify that Mike Lynch has deposited in the Dollar Savings Bank three hundred and fifty dollars, subject to his order, on the following terms : interest at seven per cent. on call, or ten per cent. by the year. J. M. Willis, cashier," and indorsed in blank by Lynch the payee, is in effect a negotiable promissory note, payable generally on demand, and due immediately, and no demand, notice or protest is necessary to charge the indorser.

2. The indorsement of negotiable paper in blank imports, *prima facie*, an undertaking to pay, and the burden of rebutting the presumption is on the indorser.

3. Where the indorsement is in blank, and the indorser, at the time of negotiating the instrument, construes the indorsement as a transfer of title unattended with liability on his part, and the other party knows he so construes it, and does not object, that construction, in the absence of an express agreement to the contrary, will control as between these two parties.

4. Considered alone, or in connection with the rest of the instructions given to the jury, so much of the charge of the court was erroneous as directed the jury thus: "See what material facts going to illustrate the issue stand undisturbed before you, and then see to what conclusion those material facts in the case undisturbed lead your minds, and as they may lead your minds, you so believing them, why, you must so find," the losing party being dependent for success chiefly on the controverted matters in the evidence, while the matters not controverted, considered by themselves, necessitated a verdict against him.

Negotiable instruments. Indorsement. Protest. Charge of court. Before Judge CLARK. City Court of Atlanta. December Term, 1878.

Goldsmith sued Lynch as indorser on five certificates of deposit differing only in dates and amounts, one of which is copied in the first head-note, aggregating $1,450.00, besides interest. The declaration was in the short statutory form with copies attached. The defendant pleaded as follows :

1. The general issue.

2. That on December 9, 1873, the defendant exchanged

the certificates sued on with plaintiff for a house and lot, and indorsed them in blank solely for the purpose of passing the title thereto, and not with any intention of becoming liable on said indorsement, as was well known to the plaintiff.

3. That at the time of this exchange, the certificates were worth par, and were selling in Atlanta at eighty cents on the dollar, whilst the house and lot were not worth more than $2,000.00.

4. That no demand was made on the Dollar Savings Bank, the place where said moneys were left on deposit, before this suit was brought.

5. That said certificates were made and were payable at the Dollar Savings Bank, a chartered bank having its place of business in the city of Atlanta, that payment was never demanded, that said certificates were never protested, and that defendant was never notified of any demand or of any protest.

The plaintiff introduced in evidence, besides the five certificates sued on, three others aggregating $550.00, which had been transferred to him by defendant at the same time, and with which he had subsequently parted.

The plaintiff testified, in brief, as follows: Came into possession of the certificates on December 9, 1873. Made repeated demands on the Dollar Savings Bank, and on each of its officers, but it was in a state of suspension, and has so remained ever since. The certificates were not protested. The bank was a chartered institution doing business in the city of Atlanta. Told defendant that the certificates had not been paid.

Defendant introduced the deed to the lot for which he exchanged the certificates. It purported upon its face to be in consideration of $2,000.00.

J. M. Willis testified, in brief, as follows: Was cashier of Dollar Savings Bank. It suspended September 25, 1873. It was put into the hands of the stockholders on October 1st, and on the 4th of the same month W. S.

Thomson, Esq., under their direction, took charge of it. After that, witness assisted him. Subsequently plaintiff came into the bank and asked witness how they were getting on? to which he replied that they were trying to get the bank on its feet again, etc. Plaintiff showed him some certificates which he had bought of Lynch, but made no demand for payment. The certificates then sold for 60 to 75 cents on the dollar. It was then thought that the bank would pay all of its debts and leave something for the stockholders.

M. Lynch, the defendant, testified, in brief, as follows: There was about $175.00 in interest due on the certificates at the time of the trade. They cost him $2,003.40; that is to say, he had to pay $3.40 more than the principal to get one of them. On or about December 1, 1873, plaintiff asked defendant if he had any money in the Dollar Savings Bank. Defendant replied that he had, and inquired what plaintiff would give for the certificates? Plaintiff said he had no money, but would give a house and lot for them. Defendant replied that he did not want a house and lot, but would rather sell them for cash and throw in the interest. After that, every time plaintiff passed his store, he would come in and talk about the "swap." Defendant continued refusing until plaintiff told him to go and look at the house, which he did, and after consulting with his partner he consented to trade. Plaintiff came to see him from seven to a dozen times on the subject. In not exceeding twenty minutes after defendant consented to swap, plaintiff brought the deed and put it on his show case. Defendant then got the certificates, when plaintiff said that as they were payable to his order he must indorse them, and he (plaintiff) would stand between him (defendant) and danger, but he could not do anything with them unless defendant's name was on them. Defendant then indorsed them in blank. He did not put his name there to be liable if the bank failed to pay; if he had ever thought that he would be liable he would not have done it. It was solely

on the faith of plaintiff's promise to stand between him and danger that he indorsed.   Two or three days after the trade, and after defendant had been to the house, and had. seen that it had only two good rooms in it, and two shed-rooms, he met plaintiff and said: "I did not think you would swindle me; I want you to rue back, and I will give you ten dollars for the trouble of drawing the papers." Plaintiff declined this proposition.   For various reasons stated, does not regard the house and lot as worth more than $1,500.00, if that, though it is assessed by the city at $1,800.00.

W. S. Thomson, Esq., testified that he took charge of the assets of the bank for the stockholders about October 1, 1873, and so remained until January, 1874.   The bank was adjudicated to be bankrupt about March 24, 1874, and witness and Candler were appointed trustees, and have since had charge as such.   About December 10, 1873, certificates of deposit sold for 80 cents cash as an investment.   They were then worth from 75 cents to par.   Plaintiff never made any demand on witness for the payment of the certificates held by him.

The above synopsis of the evidence for the defendant will clearly show the nature of the case and the questions involved.   It is only necessary to add that the plaintiff, in rebuttal, controverted every material statement.   He insisted that he parted with his house and lot for the certificates on a bank in a state of suspension solely and expressly on the faith of defendant's indorsement, and that he only did this in response to the urgent and repeated solicitations of defendant ; that his house was well worth $2,200.00, the price charged, not $2,000.00 as erroneously stated in the deed ;. that the interest on the certificates at the time of the trade amounted to about $200.00 ; that from the suspension of the Dollar Savings Bank, defendant was in a great state of excitement and alarm lest he should lose his money, and seemed to be of the opinion that because plaintiff was the cashier of the Georgia Banking and Trust Company, with

which the Dollar Savings Bank kept an account, and in close intimacy with the officers of the latter institution, that he could save him in some way; that defendant was not satisfied to leave the certificates with him simply for collection, but insisted that he (plaintiff) should become interested in them in some way, and after many entreaties and importunities on the part of defendant this trade was made; that the house was well worth the sum asked, and that defendant well knew that plaintiff would never have taken the certificates therefor unsecured by his indorsement, so as to be protected in case he failed to collect from the bank.

There was testimony upon collateral points tending to sustain and refute the statements of the parties at interest, not deemed material here.

The jury found for the plaintiff the full amount sued for, with interest.

The defendant made a motion in avert of judgment as follows, to-wit:

1. Because said defendant, if bound at all upon the instruments sued on, was bound as a security, and was liable as a security, and not as an indorser, and he was improperly sued in said action as appears on the face of the record.

2. Because the Dollar Savings Bank, the maker of said instruments sued on, and on which said defendant was so liable, if liable at all, as security, was not sued.

3. Because the instruments sued on were not in law such as could be transferred by blank indorsement, and thus create the liability on the person making such indorsement, of indorser as known to our law.

4. Because no demand and notice were averred as is necessary to charge an indorser on a negotiable instrument, payable at a chartered bank, if said instruments sued on are promissory notes and so payable.

The motion was overruled and defendant excepted.

The defendant also filed his motion for a new trial upon the following, amonst other grounds, to-wit:

1. Because the court erred, in charging the jury as fol-

lows: "It is immaterial, gentlemen, whether this is called a promissory note or what is the particular class or style of paper this is under the law. It is sufficient that it is negotiable paper. The paper is in evidence, and undisputed as to its contents, and it is a promise on the part of the bank to pay to Lynch, or his order, the sum of money. It draws interest at 7 per cent. per annum, if on call, and at 10 per cent. by the year. I say that that is substantially the contents of the papers that are sued on. It was not, in my judgment, necessary that upon this paper there should have been any demand upon the bank for its payment, or as a consequence, any protest or notice of protest to Lynch to hold him liable, if you believe that at the time of this indorsement this bank was in a state of suspension. But so far as the demand is concerned, if you believe that a demand was made upon the president or the cashier of this bank, or both, that would satisfy the requirements of the law so far as demand is concerned."

2. Because the court erred in charging as follows: "Every indorsement of a paper is a new contract as between the indorser and the person to whom indorsed, who is called the indorsee, and is an engagement upon the part of the indorser, if that indorsement is not upon any condition, not limited or qualified in any way, that he will become liable to the indorsee or any one to whom he may indorse that paper according to the legal tenor and effect. That being the true law governing indorsements, and if you believe the evidence satisfies your minds that Mr. Lynch put his name upon these papers without qualification, without restriction, the presumption is that he intended to bind himself according to the law of indorsement, as I have stated to you, and if he expects to relieve himself from the effect of that indorsement, he should show, to the satisfaction of the jury, some reason, good in law, why he should not be made so liable."

3. Because the court erred in charging as follows: "But if the matter was not understood between the two parties

at the time, or rather, I should have stated it, that in order for you to find that Mr. Lynch is not liable upon this indorsement, you must believe from the evidence, that it was the contract and the understanding of both the parties at the time, that it was not to be so."

4. Because the court erred in charging as follows: "See what is most natural, probable and reasonable under the several circumstances in the case, and also see, and perhaps more particularly see, what material facts going to illustrate this issue, stand undisturbed before you, and then see to what result and to what conclusion those material facts in the case undisturbed lead your minds, and as they may lead your minds, and you so believing them, why you must so find."

5. "Because the court erred in refusing to charge as follows: "Lynch pleads that he exchanged said instruments sued on for a house and lot in the city of Atlanta, and that he indorsed said instruments in blank solely for the purpose of passing the title thereto, and not with any intention or purpose of becoming liable upon said indorsement, and that this was well known to Goldsmith. The court charges you that if the indorsement was made by Lynch to pass title to the instruments sued on, and with the intention of not being liable thereon as indorser, and Goldsmith knew that was Lynch's understanding when Lynch made said indorsement thereon, then Lynch would not be liable."

The motion was overruled, and defendant excepted.

Error was assigned upon the refusal to arrest the judgment and to grant a new trial.

JULIUS L. BROWN; HOPKINS & GLENN, for plaintiff in error, cited on liability of Lynch as surety, and not as indorser, 4 *Ga.*, 115, 280; 29 *Ib.*, 704; if indorser, there should have been averment and proof of demand and notice, 41 *Ga.*, 614; 44 *Ib.*, 185; 9 Fla., 212. Certificates were not negotiable promissory notes, Code, §§2103, 2105,

2774; 56 *Ga.*, 206 ; 6 Watts & S., 227, 235 ; 8 *Ib.*, 353 ; 57 *Ga.*, 510 ; 44 *Ib.*, 636 ; 8 *Ib.*, 178 ; 2 Dan. Neg. Ins., §§1698, 1704 ; 48 N. Y., 478 ; 1 Greenleaf's Ev., §305 ; 28 Pa. State, 452.   Charge as to demand and notice error, Code, §2781 ; 44 *Ga.*, 178 ; 25 Miss., 571 ; 2 Wheat., 29 ; 3 John. Ch., 142 ; 27 Maine, 285 ; 2 Binney, 279 ; 8 John., 322.   Refusal of request error, 4 *Ga.*, 294 ; 42 *Ib.*, 290.   Error to refer the jury specially to the undisturbed facts, 61 *Ga.*, 322, 475 ; 59 *Ib.*, 408, 584 ; 57 *Ib.*, 489.

JOHN D. CUNNINGHAM ; B. F. ABBOTT ; GEORGE C. SPANN, for defendant, argued as follows : If Lynch was security, defect cured by verdict, 62 *Ga.*, 73 ; 45 *Ib.*, 98 ; Code, §3590.   Bank not necessary party, Code, §§2162, 2168.   Certificates negotiable, Code, §2776 ; 56 *Ga.*, 605 ; Dan. Neg. Ins., §§1702 *et seq.*   No demand and notice necessary, Code, §2781 ; 56 *Ga.*, 605 ; 52 *Ib.*, 438 ; Morse on Banking, 33.   Charge legal, and refusal covered by general charge, 50 *Ga.*, 119 ; 53 *Ib.*, 570, 633 ; 60 *Ib.*, 264, 609 ; 41 *Ib.*, 186 ; 43 *Ib.*, 529 ; 55 *Ib.*, 696 ; 54 *Ib.*, 146 ; 61 *Ib.*, 401 ; 60 *Ib.*, 309 ; 58 *Ib.*, 306.

BLECKLEY, Justice.

There was no cause for arresting the judgment.   The declaration was framed on a correct theory of the law, was full enough, and set forth a cause of action.   The instructions of the court, except that portion of the same embraced in that ground of the motion for new trial numbered 4th in the report, were substantially correct, but did not exhaust the case.   The request to charge reported in the 5th ground of the motion was proper, and was in writing.   It should have been given to the jury.   A new trial results from the denial of the request, and from the misdirection which is quoted in the last head-note ; but it is proper to go over some of the points made in the record, and dispose of them severally.

1. The instruments issued by the bank and indorsed by Lynch are, in effect, negotiable promissory notes, payable generally on demand and due immediately. That they are promissory notes, see 7 *Ga.*, 84; 6 *Ib.*, 588; 7 *Ib.*, 584; 9 *Ib.*, 338; 17 *Ib.*, 574. They contain words of negotiability, being payable to Lynch's order. 56 *Ga.*, 205 (text); 62 *Ib.*, 79, (text). That they are to be construed as payable generally, and at no particular place, and therefore not at a chartered bank, see 13 *Ga.*, 287. And that they belong to the class of paper payable on demand, and consequently due immediately, see 56 *Ga.*, 605; 15 *Ib.*, 257; Code, §2791. With reference to demand upon the maker and notice to the indorser, the Code is decisive. It provides, in section 2781, that when promissory notes are made for the purpose of negotiation, or intended to be negotiated, at any chartered bank, and the same are not paid at maturity, notice of the non-payment, and of protest for non-payment, must be given to the indorser, or the indorser will not be held liable, and that upon *no other notes* shall notice or protest be held necessary to charge the indorser. The instruments which we are considering were indorsed long after maturity, and therefore if they had been expressly payable at bank, the indorser was not entitled to notice. 44 *Ga.*, 178. Again, if, as we have held, the instruments were payable generally, demand and notice were unnecessary to bind the indorser. 44 *Ga.*, 63. The better opinion seems to be that the face of the paper, and that alone, is to govern on the question of right to notice. 4 *Ga.*, 106; 30 *Ib.*, 271; 52 *Ib.*, 131; 59 *Ib.*. 776. Apparently *contra*, 28 *Ib.*, 177.

Having spoken thus far for the court, candor obliges me to add, that since the decision was pronounced, the following line of reflection has occurred to me: What is a certificate of general deposit issued by a bank? Is it not an acknowledgment of the bank that it has received a loan of money from the depositor, coupled with a promise implied, if none be expressed, that it will repay the loan *at the bank* upon *actual* demand or call, if no particular time or place

be specified? Does not the known course of business require this construction, and does not the nature of the transaction suggest it? If these questions be answered in the affirmative, there is no *dishonor* of the certificate until after *actual* demand *at the bank*, and consequently not until after such demand is the paper over-due. If demand must be made at the bank, then the bank is the place of payment; and the right of the indorser to notice would seem to follow unless the fact that the bank was in a state of suspension, and so known to be by both parties, when the certificates were negotiated, constitutes an excuse for the omission of notice. But I pass on to the other points.

2. There can be no possible doubt that the indorsement of Lynch imported, *prima facie*, an undertaking to pay, and that the burden of rebutting is on him. He was the payee of the certificates, and he indorsed in blank, and after so indorsing, made delivery, and received value. Formerly he would have been precluded from shielding himself by parol evidence, but under the Code he may do so. While a blank indorsement, standing by itself, still has a distinct legal meaning, it is, in relation to extrinsic facts, an unbounded ambiguity—a line with an unlimited margin on either side.

3. As was his right, Lynch attempted to explain and qualify his indorsement by his own testimony, after pleading that he indorsed solely for the purpose of passing title, and with no intention of becoming liable, and that this was well known to the plaintiff. In the request to charge which the court declined, it was sought to have this defense recognized as legally available. The action was between the original parties, and no rights of third persons were involved. The Code says, in section 2756: "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." It seems to us clear that the request to charge was within this section of the Code; and

there was undoubtedly some evidence that Lynch understood the effect of indorsing in blank, under the special circumstances, to be as he alleged in his plea, and that his understanding was known at the time to Goldsmith. The indorsement being in blank, this evidence did not contradict the writing, but went to explain its ambiguity. The conflict in the evidence should have been left to be settled by the jury, but they should have been instructed as matter of law that the defense was sufficient if they found as matter of fact that it was proved.

4. The absolutely predominant influence which the court, in charging the jury, gave to the "undisturbed" facts was error. The facts which were in repose, unless some of them were made to bend to those which were in agitation, necessitated a recovery by the plaintiff. The true dispute lay in the region of the controverted facts, and to reach a correct verdict without disposing of them was impossible. Not by one description of facts or another, but by *all* the facts, ought the finding to be governed.

Judgment reversed.