No. 76.—JOHN N. PHILLIPS, plaintiff in error, *vs.* THE STATE *ex rel.* IRWIN J. SAUNDERS and another, defendants in error.

[1.] Where personal property has been levied on, in the possession of the defendant, who has given a forthcoming bond for its delivery, on the day of sale, and is subsequently claimed, the Sheriff is not bound, under the law, to transfer the possession of the property, from the defendant to the claimant.

[2.] The word *all*, as applied to persons and things, occurs frequently in all writings—lay, as well as legal—sacred and profane; and the generality of the phrase, is frequently to be restrained in an Act, not only by the context, but by the general form and scheme of the Statute, as demonstrative of the intention of the Legislature.

Mandamus. Dougherty Superior Court. Decision by Judge PERKINS, May Term, 1854.

Phillips, as Sheriff, levied a *fi. fa.* on four negroes, as the property of one James S. Miller, who had them in possession. The defendants in error interposed a claim to the negroes, and tendered, at the same time, a forthcoming bond, and demanded the possession of the negroes. The Sheriff refused to transfer the possession to claimants; whereupon, an alternative mandamus was sued out, directed to the Sheriff. Two questions were made on its return—

1st. As to the right of claimants to the possession of the negroes.

2d. As to mandamus being the proper remedy.

SCARBOROUGH & STROZIER, for plaintiff in error.

WARREN, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This case depends upon the construction of the Act of 1811. It provides—that "in all cases where a levy is made on property, which is claimed by a third person, and good and sufficient security is tendered by the party claiming the same, it shall be the duty of the Sheriff, Constable or Coroner, to take security for treble the amount of the debt on which such execution is founded, (by the Act of 1841, the bond must be double the value of the property, and payable to the plaintiff,) for delivery of the property so levied on, at the time of sale—(provided the property so levied on should be found subject to such execution)—then and in that case, it shall be the duty of the Sheriff, Coroner or Constable, *to leave the same in possession of such claimant;* and in case the said claimant or security shall fail to deliver the property, at the time and place of sale, agreeably to such bond, it shall be the duty of the officer taking the same, to transfer such bond to the plaintiff in execution; and said bond shall be recoverable in any Court of Law or Equity in this State, having cognizance thereof". (*Cobb's Dig.* 532.)

Does this Act make it obligatory upon the levying officer, to turn over personal property, levied on by him, *in all cases,* to the claimant? not only where the property was not, and perhaps never had been, in the possession of the claimant, but where it was found in the possession of the defendant; and a forthcoming bond had already been given by him, for its delivery on the day of sale?

We are satisfied that such a construction as this was never intended to be put upon this Act of the Legislature; that the language of the Statute will admit of a different interpretation, is clear. It is made the duty of the Sheriff, Coroner or Constable, *to leave the property with the claimant.* How could this be done, unless it had been previously found there? Un-

der the view contended for by counsel for the relator, other phraseology would have been used. It would have been made the duty of the levying officer, *to deliver or turn over* the property to the claimant; not *leave it* with him.

If the words of the Act are doubtful, that construction should be given to it, which would best subserve the purposes of right and justice. And reading the law in that light, I ask, why should the interposition of a claim work a change and transfer of the possession of the property? Why, in affording to the claimant this cumulative remedy—this modern mode of trying the title to the property, should this additional advantage be guaranteed to him? It is not needful to a full investigation of the rights of property.

On the other hand, we can readily see how liable this privilege is to be abused. It becomes an object for a pretended claimant to obtain the possession of personal property. He causes a small *fi. fa.* to be levied, and puts in his claim; the property is placed in his custody; and the debt is discharged and the levy dismissed, leaving the property in the claimant's possession, to be run off or otherwise appropriated. Why put such an instrument of mischief in his hands? It will be observed, that the bond is given to the *plaintiff;* and the claimant is answerable to him, only, for its delivery.

In this very case, counsel, on both sides, admit that these negroes are in dispute; why, then, under the pretence of collecting a debt, should the power of the law be invoked, to give to one of these parties an advantage over the other? Such was not the object and meaning of the Statute; it did not intend to take sides with either contestant; but to leave the property, in all cases, where it was found, provided a proper bond was given for its delivery; and not otherwise to interfere with the *status* of the parties.

The issue in a claim case is, whether or not the property is subject to the execution. If the verdict be for the creditor, it is ordered to be sold; otherwise, it is found not subject to the *fi. fa.;* and costs are recovered against the plaintiff. There is nothing in the form of the pleadings, which would warrant the

assumption, that our Claim Law contemplated any change of possession, as it respects the property.

The levying officer executes the process, but leaves the property with the defendant—taking a forthcoming bond for its delivery. On the day of sale, which may be a month or more thereafter, a claim is interposed; and the proposition is, that it now becomes his imperative duty, for failure to perform which a mandamus will lie, to transfer the possession of the property to the claimant. We see nothing in the Act, to countenance this construction.

[2.] True, it says, that in *all* cases where a levy is made, &c. One is amazed, in casting a glance over our Statute Book, to find how often this form of expression occurs, frequently signifying, as here, not absolutely all—but all, of a particular class, only. Indeed, it seems to be common to all writings, lay as well as legal—sacred as well as profane. And the generality of the phrase, is frequently to be restrained in an Act, not only by the context, but by the general form and scheme of the Statute, as demonstrative of the intention of the Legislature. Here it means, *in all cases* where the claimant is in possession of the property, he shall not be deprived of it, but it shall be left with him.

It is unnecessary to decide, whether *mandamus* be the proper remedy. It will be time enough to determine that question, when a suitable case is made.