PHILIP A. SUBLETT'S ADM'R v. THOMAS F. MCKINNEY AND ANOTHER.

The action of an accommodation acceptor, who has paid the bill, is "grounded" upon a contract in writing, within the Statute limiting the right of action to four years where it is grounded upon a contract in writing, and to two years where it is not grounded upon a contract in writing. In this case the bill was payable on demand, and the suit was brought within four years from the date of the bill.

An accommodation acceptor who has been obliged to pay the bill, though primarily liable to the payee, as between himself and the drawer, is entitled to be regarded in the light of a surety for the drawer.

The surety is entitled, upon payment of the debt of the principal, not only to have the full benefit of all the collateral securities, both of an equitable and legal nature, which the creditor has taken as an additional pledge for his debt, but he is entitled to be substituted, as to the very debt itself, to the creditor, and to have it assigned to him; and equity considers that as done already, which ought to be done, where it is necessary to sustain the action.

Appeal from San Augustine. Tried below before the Hon. Archibald W. O. Hicks.

Petition filed on the 2nd of September, 1844, as follows :—
The petition of Thomas F. McKinney and Samuel M. Williams, formerly partners, trading under the name and style of McKinney & Williams, against Philip A. Sublett, respectfully

represents that the said defendant, heretofore, to-wit : on the nineteenth day of April, in the year of our Lord one thousand eight hundred and forty-one, at San Augustine, made his certain draft or order in writing, for the payment of money, commonly called a check, bearing date the day and year last aforesaid, and then and there directed the said draft or order to your petitioners, by the name, style and firm of Messrs. McKinney & Williams, and thereby then and there requested your petitioners as aforesaid to pay to the order of Gen. Sam Houston five hundred dollars, and charge the same to account of him, the said defendant. And the said defendant then and there delivered the said draft or order to the said Gen. Sam Houston, and the said Sam Houston, to whose order the payment of the said sum of money therein specified was ordered to be made, after the making of the said draft or order, to-wit: on the day and year aforesaid, indorsed the said draft or order in blank on the reverse side thereof, and then and there presented the said draft or order to your petitioners, who paid the said sum of money specified in the said draft or order, to the said Sam Houston's order, according to the said order or request of the said defendant, whereby the said defendant became indebted and liable to pay to your petitioners the said sum of money specified in said draft or bill, with interest thereon ; and being so indebted, the said defendant has hitherto refused to pay the same, or any part thereof, and still refuses so to do, to petitioners' damage one thousand dollars. Petitioners therefore pray, &c.

A demurrer was sustained to this petition, and plaintiffs amended as follows :

And now comes the said plaintiffs, and by leave of the Court amend their petition herein, and aver that after the drawing of the said order or bill of exchange, (mentioned in their original petition,) by said defendant, Philip A. Sublett, and before the commencement of this suit, to-wit ; on the 26th day of November, A. D., 1841, they, petitioners, in compliance with

Sublett v. McKinney.

the said request of the said Philip A., in said order or bill of exchange expressed, paid to the said Gen. Sam Houston the sum of five hundred dollars, and then and there took possession of said order or bill, which was delivered to them by said Houston. Petitioners further aver that at the time they paid said order or bill to said Houston as aforesaid, said Philip A. had no effects or money in their hands, and that they owed said Philip A. nothing, and that they paid the said order or bill upon the credit of the said Philip A., and at his said written request.

Defendants demurred; which at that time raised the question of limitation; denied all and singular, and afterwards pleaded the Statute of Limitations of two years.

The cause never came to trial until 1855, before which time the draft had been lost; which was alleged.

The demurrer was overruled; plaintiff proved the loss of the bill, and the admission of the defendant, who had since died, that the draft was drawn by him and accepted, and paid by the plaintiffs without funds; and they proved by other evidence that it had been paid by McKinney & Williams, the plaintiffs and drawees.

The Court instructed the jury, that if they found that Sublett drew the draft, and that the plaintiffs paid it without having any funds of said Sublett in their hands to pay it, they should find for the plaintiffs the amount of the draft and eight per cent. interest per annum.

Defendants requested the Judge to charge the jury, that if they were satisfied that the draft was paid more than two years before the bringing of this suit, they should find for defendant; which instruction was refused.

Verdict for the plaintiff for $500 principal, and $524 interest. Judgment; motion for new trial overruled, &c.

*O. M. Roberts*, for appellant.* See opinion of Bronson, J. in

---

* This case was submitted in 1856, when Judge Roberts was at the Bar.— REPS.

case of Griffith v. Reed, 21 Wend. 502. This question came before this Court in the case of Pridgen v. McLean, 12 Tex. R. 420, and the case was decided with reference to the rule that a payment upon a draft was barred in two years. In that case, however, the account sued on, embracing the drafts, was part of a mutually running account ; and was thereby expressly taken out of the operation of the limitation of two years, and there was not the least allusion to the four years' bar, although it was directly presented in the case.

The attention of the Court is invited to the very able brief of Mr. G. W. Moore, reported in that case, on this point alone, and the authorities therein cited.

Mr. Chitty says that an accommodation acceptor may sue the drawer on the implied contract to indemnify him, "but not on the bill itself." (Chitty on Bills, 536, and marg. p. 537 ; 5 Hill, 160 ; 4 Hill, 211.)

The case of Bacchus v. Richmond, 5 Yerger, 109, often quoted in notes to elementary books, as authority against this view, is, when the case is examined, directly in its favor. (Jordon v. Robinson, 3 Ship. 171, in U. S. Dig. 5, p. 384, Sec. 1.)

If it be true then that the suit is not founded, or as the Statute expressed it, "grounded" on the bill, the Statute of four years does not, but the Statute of two years does, apply to this case ; and both the amended petition and the evidence show the claim to be barred.

The Court is asked to reverse and dismiss the case as in case of Ogden v. Lund, 11 Tex. R. 688.

*Henderson & Jones*, for appellees. The question in this cause is, whether the action by an accommodation acceptor against the drawer for money paid on an accommodation bill, is barred in two or four years. It is said by those who hold that it is barred in two years, that this follows as a consequence from the doctrine that the action of the acceptor is not on the

bill, but on an implied assumpsit. We do not see the legitimacy of the conclusion. The drawer gives a written request to the drawee to pay so much money to a third person, and to this written request the law annexes, or in it there is implied or contained a promise to repay the drawee, if he advances the money. Hence the implied promise to repay is an implied promise in writing, not in parol; that is, it is a promise implied and contained in a certain writing, the written request to advance the money, and there is no other promise to repay, of any other nature, or made in any other way. The whole contract of the drawer is in writing; there is the written request to advance the money, and in this is contained or implied the promise to repay. There is no other contract between the parties than this, which is contained in the writing.

But the doctrine that the action of the accommodation acceptor is not upon the bill, but upon an implied promise, is a strictly technical Common Law doctrine, like the doctrine that the action of a security on a promissory note, who pays the money for the principal, is not upon the note, but on the implied promise of the principal. But we all know that though this is so at Common Law, it is not so in equity as settled in the United States; but according to the rule of equity in the United States the surety who pays money for his principal, is entitled to his rights and means of redress against the principal, in the same measure and to the same extent that they were possessed by the creditor, even to an assignment of the obligation to which the surety was a party, and which he has discharged in law by his payment. See the authorities cited in our brief in Grayson v. Smith et al, submitted in 1852. Then, is not the case of an accommodation acceptor precisely like that of a surety; and is he not entitled to the same equity? The accommodation acceptor is but a surety for the drawer. It is not the understanding between him and the drawer, that he is to pay the money, any more than between principal and surety that the surety is to pay it; but

the understanding is, that the drawer shall provide funds to meet the draft, and relieve the acceptor from the responsibility he has assumed for him.

This same question was raised in two cases reported in 12 Tex. R. 374 and 420, in the latter of which it was urged in a very good argument, that the action of the accommodation acceptor was barred in two years; but yet the decision of the Court was against the objection in both cases.

Again, in Close v. Fields, 13 Tex. R., where the defendants pleaded several set-offs, consisting of bills of exchange which he had accepted and paid for the accommodation of the plaintiff, interest was allowed the defendant, and the right to it was never questioned, though the right of the plaintiff to interest on his account was strongly contested. But interest could not have been allowed except on the ground that the contract between the drawer and the accommodation acceptor was in writing.

WHEELER, J. The question is whether the action of the accommodation acceptor, who has paid the bill, is "grounded upon any contract in writing," within the Statute limiting the right of action to four years, upon contracts in writing. (Hart. Dig. Art. 2377.)

Whatever may be said of the action being upon the implied contract to indemnify, it is quite certain that without the request contained in the writing, the plaintiff would not have any right of action upon payment of the money. One man cannot make another his debtor, by paying his debt without his request, unless he has come under obligation to some third person to make payment. It therefore is not the payment of the money, which gives the right of action; but it is founded, in part at least, upon the writing. The doctrine that the plaintiff must sue upon the implied contract, is, to say the least, quite technical; and is confined in its application to Courts which recognize the distinctions of forms of action. Our law does not recognize these distinctions; but the plaintiff must sue

upon his case ; and the writing certainly constitutes a very material and essential part of that case. The mere fact of payment does not raise a promise by implication. No promise to indemnify is implied, except it be upon request ; and that request, in this case, is in writing : so the writing is the foundation of the promise ; and, discarding technical niceties, it may be said to be the ground of the action. It gives rise to the promise which, in compliance with the request, springs out of, and is grounded upon it.

An accommodation acceptor, who has been obliged to pay the bill, though primarily liable to the payee, as between himself and the drawer, is entitled to be regarded in the light of a surety, and has equal claims upon the aid of a Court of equity to enforce his rights against the maker, with any other surety who has paid the debt of his principal. It is the doctrine of the Civil Law, and it was the doctrine of the Court of Chancery in England in the time of Lord Hardwick, that the surety is entitled, upon payment of the debt of the principal, not only to have the full benefit of all the collateral securities, both of an equitable and legal nature, which the creditor has taken as additional pledge for his debt, but he is entitled to be substituted, as to the very debt itself, to the creditor, and to have it assigned to him. This was the doctrine of the earlier English cases, (*ex parte* Crisp, 1 Alky. 133 ; Morgan v. Seymour, 1 Ch. R. 64 ; Parsons v. Briddock, 2 Vern. 608,) and it does not appear to have been questioned, prior to the cases of Copis v. Middleton, (1 Turner & Russ. 224,) and Hodgson v. Shaw, (3 Mylne & Rem. 183, 8 Eng. Ch. R. 338.) These latter cases, while they hold the general doctrine, that the surety is entitled to every remedy which the creditor has, and to have an assignment of all the securities in the hands of the creditors, yet deny him the right of complete substitution to the rights of the creditor, by having assigned to him the very obligation upon which he was surety, upon this technical idea, that the payment by the surety is an extinguishment of the obligation,

and the assignment of it would transfer that which, being extinguished, is no longer any security. But this narrow technical view of the case has not received the approbation of Courts of equity generally in this country. The subject was examined with great learning, research and ability by the Supreme Court of Georgia in the case of Simpkin v. Mills, (4 Ga. R. 343,) and the doctrine of the two English cases last cited was discarded, as opposed to the great weight of authority, English and American, as unsound in principle, and unfit to have a place in the enlightened remedial justice of a Court of equity. The principle which supports the right of substitution to the rights and remedies of the creditor, applies equally to his right to have a transfer of the particular obligation or contract, as to any other security. " The substitution of the surety," it is pertinently said, " is not for the creditor as he stands related to the principal after the payment, but as he stood related to him before the payment. He is subrogated to such rights as the creditor then had against the principal ; one of which unquestionably was to enforce his bond against the principal." (Id. 349.) This is certainly the correct deduction from the universally admitted right of substitution. For if the doctrine were sound, that the obligation on which the surety was bound, cannot be assigned, because it is extinguished by the payment, it would apply equally to every other security, and destroy the right of substitution altogether. For the payment of the debt operates as complete an extinguishment, in equity, of every collateral security, as it does of the obligation of the principal security. So it has been uniformly held by this Court in the case of mortgage and other securities. (Duty v. Graham, 12 Tex. R. 427.) The authorities upon the question of the right of substitution in such a case, are collected and reviewed with great research and ability by the counsel for the appellee in his printed brief in the case of Grayson v. Smith, which has been furnished the Court on the hearing of this case, and it is there also

shown that there is a very great weight of authority in support of the doctrine of the surety's right of complete subrogation.

In Jordan v. Hudson, (11 Tex. R. 82,) this Court held that a surety who has paid the debt of his principal, is entitled to be subrogated to all the rights of the creditor, whose demand he has paid. The rights to which he is entitled to be thus subrogated, are those which the creditor had while the obligation of the contract subsisted ; not such as he has after the debt has been paid ; for, by the payment the rights of the creditor are extinguished. The doctrine is that the payment entitles the surety to be subrogated to all the rights of the creditor. It was his right to sue upon the contract. The surety, upon payment, is subrogated to this right, and may in like manner maintain his action. The surety was entitled to have the security assigned to him. Equity considers that as done already, which ought to have been done ; and so treating the assignment as having been made, maintains the right of the surety to sue upon the contract.

The plaintiff in this case has brought his action upon the contract. This right of action accrued upon payment of the debt ; and it results, from the view we have taken of the case, that the action was not barred by the Statute. The judgment is therefore affirmed.

Judgment affirmed.

ROBERTS, J., did not sit in this case.