MILO S. FREEMAN, plaintiff in error, *vs.* WILLIAM A. CHERRY, defendant in error.

Under the provisions of the Revised Code, sections 2738, 2739 and 2123, accommodation indorsers of a negotiable security, payable at a chartered bank, are considered as securities merely, and if one pays off the debt he can compel the others to contribute.

Accommodation indorsers. Contribution. Before Judge COLE. Bibb Superior Court. October Adjourned Term, 1871.

William A. Cherry filed his bill against Milo S. Freeman, J. W. Blackshear and Thomas J. Flint, for contribution. The bill set forth the following condition of affairs: In 1868, Blackshear, being indebted to the Home Insurance Company, procured complainant, Freeman and Flint to indorse his note, negotiable at bank, simultaneously, the name of the payee being left blank, all the parties understanding that the payee was the insurance company. It so happened that complain-

ant was the first to place his name on the back of the note. Without complainant's knowledge or consent, his name was subsequently inserted as payee. Suit was brought on said note, and at the November Adjourned Term, 1869, of Bibb Superior Court, a judgment was rendered against complainant as first indorser, said Flint as second indorser, and said Freeman as third indorser. Execution issued on said judgment for $500, principal and interest to April 5th, 1870, and costs amounting to $84.31, which complainant has been compelled to pay. Blackshear and Flint are now and were insolvent at the time judgment was rendered. Prayer that Freeman may be decreed to pay to complainant one-half the amount of said execution.

Blackshear and Flint filed no answer. Freeman answered the bill, but set up no facts necessary to an understanding of the decision of the Court. The jury returned the following verdict: "We, the jury, find for W. A. Cherry $286.85, with interest to date." Whereupon the defendant, Freeman, moved for a new trial upon the following, among other grounds:

Because the Court erred in charging the jury as follows, to-wit: "I charge you, gentlemen of the jury, that at common law and under the decisions of the Supreme Court of Georgia prior to the adoption of the Code, indorsers on promissory notes were not bound to contribute, but were bound each to pay the whole debt in the order of their indorsement, the one first indorsing first bound, and could not collect anything out of the indorsers after him. The Legislature of Georgia has, however, seen fit to change the law, and to make accommodation indorsers bound as sureties. Section 2123 of the Code declares an accommodation indorser to be merely a surety, and since the law require sureties to contribute, accommodation indorsers are also bound to contribute; that is, if one of several accommodation indorsers is forced to pay the note indorsed, he may require the others to pay, each his share, to be divided equally among the solvent indorsers.

And I charge you, gentlemen of the jury, that if, from the evidence, you believe that that the indorsers on the note in question were accommodation indorsers, (that is, indorsers having no interest in said note,) and that Cherry paid the judgment obtained against them on said note, and that Blackshear and Flint are insolvent, then Cherry is entitled to recover from Freeman half the amount paid, with interest from the time of payment."

The motion for a new trial was overruled by the Court, and plaintiff in error excepted, and assigns said ruling as error.

JEMISON & NISBET, for plaintiff in error, submitted the following brief: The codifiers had no authority to make changes in the law: Acts of 1858; preface to Code. Prior to the adoption of the Code, accommodation indorsers were not bound to contribute: 7th Johns., 361; 3d Peters, 470; 5th Howard, 276; 21st *Ibid.*, 432; 1st Kelly, 205; 4th *Ibid.*, 106, 267. The law as to contribution is not changed by sec. 2123 of the Code. Liability of surety: Code, sec. 2120. Liability of indorser: Code, sec. 2738. The Code makes no change in the law merchant as to bankable paper. The Code did not become law until ratified by the approval of Congress, June 25th, 1868, one month after the note in question was made.

LANIER & ANDERSON, for the defendants.

McCAY, Judge.

Our Code, section 2123, has this language under the head of "Principal and Security" : "The form of the contract is immaterial provided the fact of suretyship exists; hence an accommodation indorser is considered *merely* as a surety."

It is difficult to put *any* meaning upon this provision of the Code if it does not mean that accommodation indorsers are liable to contribution. *All* indorsers are, in a *certain sense*, securities. They all undertake for the maker of the

note. But ordinary indorsers receive value, since *prima facie* an indorsement implies that the indorser, not the holder of the note, passed it to the indorsee for value.

In this State, since the act of 1826, *all* indorsers of notes not payable at bank are securities, in almost every respect, save that they are liable to each other in the order of their indorsements. They are not entitled to notice; they may be sued in the same action with the maker, and they may give notice to sue as other securities. Our Code, section 2738, says: "In ordinary indorsements the contract of the indorser is to pay the money, if the *parties* to the instrument primarily liable thereon fail to pay according to the terms thereof; hence, if there are several indorsers each is liable to subsequent ones in the order of their several indorsements."

But section 2123, which we have quoted above, says that whatever may be the *form* of the contract, accommodation indorsers are considered as securities merely. It would seem wholly useless to say this if they are to be liable as other indorsers. The form of every contract of indorsement is the same; *prima facie*, it imports that the indorser passes the note to the indorsee for value. This is the ordinary meaning of the contract, and as provided by section 2738, it guarantees that not only the makers but every previous indorser will pay, and each is liable to the other in the order in which they stand. The fact of securityship does not exist as between one indorser and the others. Each gives and each receives value. But in the case of accommodation indorsers, there is no sale or passage of the note from one indorser to the other—the fact of suretyship does exist.

In such a case section 2123 says, however the form may be, they are securities merely. As to the maker, they are all securities in every indorsement, and there is no propriety in the language of section 2123, unless it means to say that they are securities as to each other. There was clearly an intent to make *some* distinction between accommodation indorsers and ordinary indorsers. Under our law, as it has stood

since 1826, there was no distinction—see 1 Kelly, 205—nor was there any distinction at common law. What other distinction is there than this, that they are to be liable to contribution? Our act of 1826 provided that *all indorsers* of notes not payable at bank were to be treated as securities. This Court, however, held, in 1st Kelly, 205, that this only meant that they were not entitled to notice, and might be sued in the same action as the principal. The Code leaves out this *general language* of the Act of 1826, though it provides that indorsers of notes not intended to be negotiated at a bank are not entitled to notice, and may be sued with the principal: sections 2739 and 2740. But as to accommodation indorsers it provides that they are *securities merely.*

We can see no other motive for this language and for the provision in section 2738, as to ordinary indorsements, except to change the rule at common law and as it previously stood in this State, by making them liable to contribution. In every other respect but this, an ordinary indorser is a security only. This is the meaning of the ordinary contract of indorsement—the form of it—and the section under consideration says, notwithstanding the form, an accommodation indorser is treated as a surety merely. And this is, in our judgment, an eminently just and proper change of the law. As the common law was, the presumption of law, to-wit: that the indorser had transferred the note to the transferee for value, was directly contrary to the truth of the case when the indorser was only an accommodation indorser, and it required a very refined and subtle line of reasoning to sustain the liability of a prior accommodation indorser to a subsequent one, on principle, since the want of consideration between them was apparent. See 1st Kelly, 205.

The law of the Code is, therefore, just. The indorsers are in fact securities for the maker. That, in this case, is the truth of the matter, whatever the form may be. That was the motive of each for signing, and it is nothing but carrying out the real meaning of the signing to hold that even as be-

tween themselves they are securities merely for the maker, and liable to contribution as between each other.

Judgment affirmed.