MIMS S. WARE, executor, plaintiff in error, *vs.* THE CITY BANK OF MACON, defendant in error.

[JACKSON, Judge, having been of counsel, did not preside in this case. It was argued at the last term, and decision reserved.]

1. The drawer and the indorser may be sued together without joining the acceptor. If the indorser intends to raise the question of jurisdiction, he should do so in distinct terms, and should make the question when, or before, pleading the merits.

2. If, in fact, the suit on a bill is against drawer and indorser, the defendants should be so described in the declaration. Omission to describe them may be amended, where there is enough set forth to amend by. In this case, direction is given to restore the declaration to its original form.

3. The pleadings will be taken, in the supreme court, as correctly copied

in the transcript of the record. A different version of them in the bill of exceptions will be disregarded.

4. In a suit brought by the holder, upon a bill payable to the order of the drawer, and indorsed by him and another, each indorsing in blank, the two are to be treated as indorsers, or as drawer and indorser, and not as joint promisors, though the bill may have been accepted for the accommodation of both. Relatively to the holder, they are not joint promisors, though that might be their relation to the acceptor in an action by him for money paid for their use and at their request. The holder does not take his title from the acceptor, but from the payee through the indorsement. Without the indorsement as such the holder would not have the legal title, but would be an apparent stranger to the instrument.

5. Notice to sue must specify the county of the debtor's residence. It is not a compliance with the statute to say "of Macon, Georgia," there being in the state both a county of Macon and a city of Macon, and the notice not indicating that the county was meant rather than the city.

6. Where a draft, when presented for acceptance and accepted. had in the body of it a mortgage or crop lien in favor of the acceptor, and, also, an undertaking by the drawer to deliver to the acceptor, at his warehouse, a specified crop of cotton, the mortgage or lien was for the protection of the aceeptor. A holder of the draft had no right, and was under no duty, to enforce the lien against the cotton after it reached the acceptor's hands.

7. The draft specifying a certain rate of interest (not usurious), the holder could collect at that rate from the drawer and the indorser. But the stipulation for attorney's fees was a part of the contract of the drawer with the acceptor, as to the lien, etc., and falls within 49 *Ga.*, 604, and 57 *Ib.*, 333. No attorney's fees are collectible by the holder in an action upon the draft.

8. The judgment, as well as the declaration, is amendable as to the description of the defendants, etc.

Negotiable instruments. Pleadings. Indorsement. Practice in the Supreme Court. Lien. Fees. Amendment. Before Judge HILL. Houston Superior Court. November Term, 1876.

The City Bank of Macon, on November 2, 1874, brought complaint against George S. Haslam, Jr., and Mims S. Ware, as executor of Shadrach Ware, deceased, for $1162.79, besides interest, alleged to be due "on a certain instrument in writing in the form of a draft, dated June 7, 1873, signed

by said Haslam on the face and back thereof, and by said Shadrach on the back, requesting Campbell & Jones to accept the same for the accommodation of said George S. Haslam and said Shadrach, which the said Campbell & Jones did, due five months after date." Attached to the declaration was a copy of the instrument sued on. It was in the form of a draft, embracing within it a factor's lien on the drawer's growing crops and personalty, to secure the repayment of the advance and ten per cent. counsel fees; also a promise to deliver to drawees sufficient cotton to pay off the obligation at maturity. Across the face of this paper was written the firm name of Campbell & Jones. It was indorsed by George S. Haslam, Jr., and S. Ware.

Ware, executor, pleaded in substance, as follows:

1. The general issue.

2. That testator was only a security on the note or draft; that both before and after said paper matured, this defendant notified the plaintiff, in writing, to proceed at once to collect the same out of the principal, George S. Haslam, Jr. That this notice was given in October and November, 1873, and in January, 1874, whilst no proceeding was taken against said Haslam until November, 1874.

3. That at the time said paper matured, said George S. Haslam, Jr., had in Campbell & Jones' warehouse, in the city of Macon, —— bales of cotton, and this defendant notified the plaintiff, in writing, that said cotton was there stored, subject to the draft sued on, and to proceed to assert its lien theron, which plaintiff failed to do for more than three months after said notice.

4th. That the plaintiff held other claims against said Haslam, which had no lien on the cotton in possession of Campbell & Jones, and that notwithstanding the written notice to plaintiff to proceed to assert its lien, it failed and refused to do so, but that on the contrary it allowed said cotton to be sold, and the proceeds to be applied to the payment of the other notes which it held against said Haslam.

According to the bill of exceptions, at the trial term, long

after the pleas were filed, the plaintiff amended by adding, in substance, the following averment: Petitioner further shows that George S. Haslam Jr., and Mims S. Ware, executor, are indebted to it on a certain promissory note, made by said defendants in the form of a bill of exchange, drawn by the said George S., on Campbell & Jones, payable to the drawer's order, with the names of the said defendants written on the back of said bill, and accepted by the said Campbell & Jones, for the accommodation of said defendants.

As to this amendment the record is silent.

To the proposition to amend at the time when made, the defendant, Ware, executor, objected. The objection was overruled, and he excepted.

To the proposed amendment he objected, as being illegal and not in conformity to the statute, and because it contained new and distinct causes of action. These objections were overruled, and he again excepted.

He then demurred to the declaration as amended, upon the following grounds:

1. Because the acceptors were not joined in said declaration—that, as the plaintiff had elected to treat two out of the four parties to said paper as joint obligors, he was bound to join all of the parties, to-wit: the drawers, acceptors and indorsers, in the same suit.

2. Because the defendant's testator was only an indorser, as appeared from the declaration and the instrument thereto annexed, and defendant, as his legal representative, should have been sued in that capacity, and not as a joint obligor.

3. Because the amendment set forth new and distinct causes of action.

The court overruled the demurrer, and defendant excepted.

The facts presented by the testimony, so far as material, are stated in the opinion.

The court charged the jury as follows: "If you are satisfied from the evidence, that Campbell & Jones accepted the draft sued on as accommodation acceptors, at the request

of, and for the benefit of, Shadrach Ware, they, at the time, having no funds of the drawer in their hands, accepting it only on condition that said Ware had indorsed, or would indorse, said draft, to indemnify and protect them from the payment of the same as such acceptors, then the plaintiff would be entitled to a verdict for the full amount of the principal of said draft, with interest on the same from the date thereof, at the rate of ten per cent. per annum, and also ten per cent. on the amount of principal and interest due on said draft at the date of trial, for attorneys' fees, against the said George S. Haslam, Jr., and the defendant, Ware, as executor of Shadrach Ware, deceased." To this charge the defendant, Ware, executor, excepted.

The jury found for the plaintiff $1,162.79, principal, with interest at 10 per cent. per annum, and 10 per cent. counsel fees.

The defendant, Ware, executor, assigns error upon each of the above grounds of exception.

W. S. WALLACE; LYON & NISBET, for plaintiff in error.

JNO. C. RUTHERFORD; WOOTEN & SIMMONS; HALL, LOFTON & BARTLETT, for defendant.

BLECKLEY, Judge.

1. The action was against the drawer and the executor of the indorser. "In all cases the indorser may be sued in the same action, and in the same county, with the maker, or drawer, or acceptor": Code, §2782. Under the constitution (Code, §5122,) it admits of question whether this provision for forcing the indorser to the drawer's county could not be resisted by timely objection to the jurisdiction. The language of the constitution is, that "suits against the maker and indorser of promissory notes, or other like instruments, residing in different counties, shall be tried in the county where the maker resides." "Other like instruments" will include bills of exchange; but after acceptance of a bill the

acceptor, and not the drawer, according to the common authorities, stands in the relation corresponding to that of the maker of a note: 21 *Ga.*, 135; 1 Parsons on Notes and Bills, 54. The Code, however, seems to treat the drawer as maker : section 2773. But what the indorser might have done in the present case need not be considered, for he waived his right of objecting to the jurisdiction by pleading to the merits. The Code declares, in section 3461, that "if a defendant appear and plead to the merits, without pleading to the jurisdiction, and without excepting thereto, he thereby admits the jurisdiction of the court." The suit was returnable to November term, 1874. On the 24th of May, 1875, the indorser filed the plea of "not indebted," and some special pleas setting up his discharge. The case was tried at May term, 1876. At no time, so far as appears, was any distinct objection presented to the jurisdiction of the court. It may be that it was the purpose to make that question by the various exceptions taken to the declaration before and after it was amended; but if so, there was no direct avowal of the purpose, and, moreover, all this occurred while the pleas to the merits were in. The waiver, under section 3461 of the Code, had already taken place. The pleas were never withdrawn.

2. The declaration seems to have stood in its original form, not demurred to or otherwise attacked, until the term of the court at which the trial took place. We think its original form was correct, and we direct that form to be restored by amendment. The legal significance of the declaration, as it comes up in the transcript of the record, is, perhaps, substantially the same now as it was then. Read in connection with a copy of the draft annexed to it, the relation to each other of the parties sued, can be made out with adequate legal certainty—see 13 *Ga.*, 311; but the drawer and indorser ought, in perfect strictness, to be named as such, respectively, and they were so named at first. Let the proper designation of each be restored.

3. According to the bill of exceptions, a part of the

amendment made at the trial treated the instrument de- clared upon as a promissory note; but no such matter is found in the declaration itself, as the transcript of the record sets it forth. In this court, the transcript, and not the bill of exceptions, is to govern in respect to the real contents of the pleadings. 56 *Ga.*, 439.

4. The bill sued on was drawn by Haslam, payable to his own order. He indorsed it, and then negotiated it to Ware for value. This appears from the evidence. Ware, either before or after it was accepted by the drawees, indorsed it; and after it was accepted, he put it in circulation with his own name upon it as second indorser. Both indorsements were in blank. Now, with respect to the regularity of the bill, and the proper designation of Haslam and Ware as parties, and their relations to each other, it is wholly immaterial whether Ware indorsed before acceptance or after, or whether the acceptance was for the sole accommodation of Haslam, or for the accommodation, and at the request of Ware, also. Haslam fills precisely the description of drawer and first indorser. Code, §2773. And Ware, having indorsed subsequently, and paid value, has, as against Haslam, the rights of a second indorser. Code, §2780; 46 *Ga.*, 17. They are not joint promissors, *upon the bill,* in any sense whatever. Grant that the acceptors accepted for their joint accommodation, and that the acceptors were never put in funds with which to pay, this would not enable the holders to treat the two indorsements as one. Payment of the bill by the acceptors out of their own funds would not entitle the acceptors to maintain any action whatever on the bill itself. They would have to sue for money paid, and the bill would be relevant as matter of inducement only. 23 *Ga.*, 49; 52 *Ib.*, 379.; 54 *Ib.*, 104. In 52 *Ga.*, *supra*, where it was held that the drawer and indorser were liable to the accommodation acceptor as joint promissors, it was expressly stated in the opinion that the action was not on the paper, but for money paid. As the money sued for was paid at the request of

both, they were jointly liable to refund it; just as they would have been if the request had been made and complied with without the use of a bill. But a suit by the holder, as in the present case, must be on the bill itself; and the bill being perfectly regular as to the parties, there is no occasion for raising any imaginary difficultities in pleading. The parties sued are drawer and indorser, and as such they are liable to the plaintiff in this action. The evidence of Jones, one of the acceptors, was utterly immaterial, for which reason it is unnecessary to decide whether the death of Ware, the indorser, rendered him incompetent to testify or not. Any error in the charge of the court based on his evidence, was also immaterial.

5. The defence insisted upon by the executor of the indorser was, that he was discharged because of notice given to the holder to sue, under the Code, §2156; and because of failure of the holder to proceed against the cotton mortgaged in the same instrument which is now sued upon as a draft or bill. Of the notice to sue, it is enough to say that it failed to give the county of the residence of the parties to be sued, or of any of them. It described the acceptors as of Macon, meaning, most probably, the city of Macon; but as there is also a Macon county in the state, the notice was ambiguous. The statute entitles a creditor to be informed by the notice in what county the debtor or debtors reside, against whom suit is to be brought; and it is expressly declared that a notice, wanting in this requisite, shall not be effectual.

6. In the body of the bill or draft declared upon, was a crop lien or mortgage, and a stipulation to deliver cotton at the warehouse of the acceptors. This part of the contract was between the drawer and the acceptors, and was for the security and protection of the latter. It was the mode adopted for putting the acceptors in funds with which to pay the draft, or (in case of failure to deliver the cotton) for enabling them by foreclosure of the lien or mortgage to reimburse themselves for advances which they might have to

make out of their own means to meet the draft at maturity. When the bill was accepted and put in circulation, any holder of the same could look to the acceptors as well as to the drawer and indorsers for payment, but could have no right to interfere with the security which had been the basis of the acceptance. In order to pass that security to the holder, some assignment of it by the acceptors would be necessary. It would not pass out of the acceptors and into the holder by any chain of indorsement beginning with the payee. The payee could not indorse away the security to which the acceptors looked when they engaged their personal credit and responsibility for the payment of the bill. It is plain, therefore, that if cotton reached the warehouse of the acceptors which was subject to be appropriated by them to this draft, they were entitled to the custody of it, and it was neither the duty nor the right of the holder of the bill to disturb their possession. 36 *Ga.*, 410; I. Otto, 92; 19 *Ga.*, 73; Code, § 2779. It follows, that the defense to the action was wholly unavailable and inadmissible, in so far as it rested upon a failure of the holder to proceed against the cotton.

7. It was objected that the rate of interest mentioned in the draft was not collectible by the holder, but only the ordinary rate of seven per cent. Possibly, the promise as to interest might be construed to mean that the drawer would pay to the acceptors at the stipulated rate, if the acceptors had to advance money of their own to take up the bill. We incline to think, however, and so rule, that the sounder construction is, that the bill itself was intended to bear the conventional rate specified, and that the court below was correct in computing interest accordingly. On the subject of attorneys' fees, we entertain a different view. The contract as to them, appears to be altogether between the drawer and the acceptors, and to relate to the enforcement of the lien, etc. The cases in 49 *Ga.*, 604, and 57 *Ib.*, 333, seem to apply. The action being by the holder upon the draft, we think the attorneys' fees should be disallowed, and we direct that

the verdict as to them, be set aside, and the judgment be reduced to correspond with the verdict as thus modified.

8. Finally, the judgment can and should be amended so as to conform to the declaration in describing one of the defendants as drawer, and the other as indorser. The Code, §3572, directs, that in judgments against sureties or indorsers, the relation of the parties under the contract shall be designated and identified, and that execution shall issue accordingly. Let this be done.

Judgment reversed in part, with directions as indicated above.