HULL v. MYERS.

1. Accommodation indorsers who have under their own control and management all the assets and business of their principal, and whose duty it is to see that funds are provided and the debt paid, are not entitled to notice of the dishonor of his promissory note which they have indorsed. Thus, the directors of an insolvent corporation, who, wishing to raise funds to carry on the corporate business, procure a loan on a negotiable promissory note made by the corporation, payable to their order, on demand after date, at a bank, and indorsed by themselves individually, are liable as indorsers, without notice of the dishonor of the note by the corporation.

2. Usually, the same facts which would dispense with notice of dishonor, or excuse the holder from giving notice, will render protest unnecessary.

3. Accommodation indorsers upon notes payable at a chartered bank are, by virtue of the code, section 2151 (code of 1868, §2123), liable to contribution as other mere sureties.

4. As a result of sections 2176 and 2177 of the code, which make sub-
rogation a legal as well as an equitable right, accommoda-
tion indorsers who have paid more than their *pro rata* share of
the debt may sue jointly a co-indorser for contribution, founding
their action upon the indorsed instrument, and will have the same
time in which to bring suit as the creditor would have had on the
same instrument. Hence, such an action brought for contribution
before six years have expired from the maturity of the indorsed
note would not be barred, although payment of the note to the
creditor was made more than four years prior to the bringing of
the action. But one of the subrogated indorsers cannot sue sever-
ally on the note for his *pro rata* share of the contribution to which
he and his co-owners of the note are entitled. The present action
is not founded on the notes, but is an action for money paid by
the plaintiff for the defendant's use, and having been brought
after four years from such payment had expired, is barred.

5. Where, of several indorsers for accommodation, some pay off the
whole debt, though each of these has no several right of action
upon the note for contribution against a co-indorser who has paid
nothing, yet each may sue severally for contribution to the extent
of his own share thereof, in an action for money paid for the de-
fendant's use, payment to the creditor having been made, not out
of a joint fund, but out of individual assets contributed by each
paying indorser from his own resources.

January 6, 1893.

Promissory note.   Indorsement.   Protest.   Notice.
Corporation.   Subrogation.   Limitation.   Contribution.
Before Judge EVE.   City court of Richmond county.
February term, 1892.

On June 12, 1891, Asbury Hull sued Samuel H. Myers
for $175 and interest on two notes made by the Augusta
Athletic Association, payable to the order of George R.
Sibley and others of the directory of that association.
One of them is dated August 6, 1885, is for $1,200,
payable on demand after date, with interest at eight
per cent., at any bank in Augusta, and is indorsed,
"George R. Sibley, John J. Cohen, Asbury Hull, Sam-
uel H. Myers, W. L. Boyce." The other is dated Sep-
tember 23, 1885, is for $2,200, payable on demand after
date, with interest at eight per cent., at the Commercial
Bank of Augusta, and is indorsed, "George R. Sibley,

W. L. Boyce, John J. Cohen, F. W. Foster, Asbury Hull, Samuel H. Myers." The declaration alleges that in August, 1885, the plaintiff, the defendant, and others hereinafter named, being directors and stockholders of the Augusta Athletic Association, a corporation which was without resources, assets or credit, and greatly in need of money, and unable to raise money necessary to carry on its business, as security for said company agreed among themselves, as an accommodation to the company, to indorse its demand notes for $1,200 and $2,200, for the purpose of raising those sums for it; and in pursuance of said agreement the notes above described were executed on the days they were dated, and were indorsed contemporaneously by each of said directors, and by virtue thereof the sums named were raised thereon and received and used by the company. "Said notes not having been paid by the company and it being utterly insolvent, the same was taken up and paid off, February, 1887 (?), by Asbury Hull, John Jay Cohen, F. W. Foster and George R. Sibley, each paying $875, besides interest, instead of $700 as they would have done had defendant paid $700, his share, the other indorser thereon being insolvent at the time of signing same, since and now; and said Asbury Hull paying $875 besides interest, whereas if said Samuel H. Myers had paid his proper proportion, he would only have been forced to pay $700 and interest. That each of said directors so signing said notes did so as sureties for the maker and it was so understood and agreed between each of them. The said defendant, in consideration of said indebtedness, afterwards on February 30, 1887, in said county, undertook and faithfully promised to pay his proportion of the same, to wit $175 and interest, but though often requested, has hitherto refused and still fails and neglects the same to pay, to petitioner's damage two thousand dollars."

The defendant demurred to the declaration on the grounds, that it sets forth no legal cause of action; that neither of the notes having been protested, the defendant is discharged from liability thereon; that if not discharged, he being the last indorser on one of them and next to the last on the other, and the last indorser on that note not suing, defendant is not liable to contribute to the preceding indorsers; that the allegation that he was a surety does not make it so in law, the legal effect of the paper itself showing that he was an indorser; and that the cause of action is barred by the statute of limitations. The plaintiff offered to amend the declaration so as to make the last clause allege that the defendant, " in consideration of said indebtedness, afterwards on February 28th, 1887, in said county, expressly and repeatedly afterwards verbally promised plaintiff to pay his proportion of the same, to wit $175 and interest, but though often requested, has hitherto refused and still fails and neglects the same to pay, to petitioner's damage two hundred and fifty dollars." The court refused to allow this amendment, and sustained the demurrer. The plaintiff excepted.

JOSEPH R. LAMAR, for plaintiff.

J. S. & W. T. DAVIDSON, for defendant.

BLECKLEY, Chief Justice.

1. Good sense, good morality and good law are one and the same so long as they are not sundered violently by legislation or ignorantly by judicial error. Their unity and identity, so far as one of the questions in this case is concerned, we find still intact. There is no statute to drive, neither is there any precedent to lead, decision into absurdity or injustice. We can and do hold that accommodation indorsers who represent their insolvent principal in procuring a loan of money for the principal's use, upon a promissory note which they cause to be made in his name and which they indorse

in their own names, they having at the time full control of his business and all his assets, and their relation to him being such as to make it their duty to see that the note is provided for and paid at maturity, are not entitled to notice of its dishonor. May be they do not stand in his shoes; if they do not, it is because they are his shoemakers and have suffered him to become and remain barefooted. Though the debt is his and not their own, primarily, yet, having all his assets and full power over them, and over all his business, they are bound to know all that he would be bound to know were his business and assets in his own hands and under his own management. In this instance the principal being a corporation, and the indorsers the corporate directors, the latter could have no right or reason to expect that funds would be provided for liquidating the debt unless it was done by their procurement or through their agency. The charter of the "Augusta Athletic Association" is not before us, and in its absence we must take it for granted that the directors of that corporation had the powers and were under the duties which appertain to corporate directors according to the general rules of law. Special provisions in the charter might vary these powers and duties in the given instance, but such provisions would, in order to gain recognition, have to be brought to the attention of the court. The usual rule is that all the assets and operations of a corporate business are under the government and control of the directors. A single director, or even a minority of the directors, indorsing a note for the corporation, might be entitled to notice of dishonor; for one only, or a small number, might have a right to suppose that the note would be attended to at maturity; but when the whole board, or a majority of its members, unite in the indorsement, each and all so indorsing should be charged with the duty and responsibility of

protecting the paper, since the power to control the conduct of the corporation in respect to paying or not paying would be in their own hands. On the question of notice, the present case is fairly and fully within the principle of Corney *v.* DaCosta, 1 Espinasse, 302, in which it was held that where the indorser of the notes of an insolvent person took effects of the insolvent to the full amount of his indorsement, he could not avail himself of the want of notice of non-payment of the notes at maturity. The facts of that case are meagerly stated in the report, but they indicate that the indorser took the maker's effects, not merely to hold them for his protection, but for use in raising funds with which to discharge the indorsed paper. He was treated as if he were primarily liable and the debt were his own. Following the reason and spirit of that decision, these directors ought to be treated in the same way.

2. With respect to the want of protest, it is true that the letter of the code, §2781, makes protest necessary in order to bind indorsers upon any bill or promissory note payable at a bank, thus, in effect, putting all such paper on the footing of foreign bills of exchange as to this commercial solemnity. But the requirement as to protest was not, we think, intended to be more comprehensive than the requirement as to notice. Taking the letter of the statute and adhering to that, both protest and notice would be essential in such a case as the present, as the statute makes no exception. The true construction of the statute, however, is that it lays down a general, not a universal rule. It could hardly have been intended to overthrow the whole principle of special cases, standing on special facts, a principle so long and so deeply rooted in commercial law. If this was not designed as to notice, there is no reason to think it was as to protest, for why should protest for dishonor be needed where notice of dishonor is dispensed with?

Both upon reason and authority the same facts which would dispense with or excuse the holder from giving notice will in most cases render protest needless. Benj. Chalm. Bills, Notes and Checks, p. 180, art. 182. This is true of foreign bills. Legge v. Thorpe, 12 East, 171. With equal reason should it be true of domestic notes, if the indorsers, by reason of special facts, have no higher standing than the drawer of a bill. On the whole, notwithstanding the broad provisions of the code as shaped by the original words and extended by those derived from the act of 1876, we are of the opinion that the law of this State will not permit us to treat these directors as discharged from their contract as indorsers because the indorsed notes were not protested for non-payment. The word "all" in a statute may be restricted by the general form and scheme of the enactment. *Phillips* v. *The State*, 15 *Ga.* 518. We may add that these indorsers, though sureties, are nevertheless indorsers proper, and in no sense joint makers with the corporation, the notes being payable to their order, and, of course, not made payable *by* them as well as *to* them. The only contract to pay into which they entered was one of indorsement. This being so, were they not taken out of the general rule of the code by the special facts, they would be discharged, for the notes belong to the class of paper to which section 2781 of the code applies, both as to protest and notice. A note payable "on demand after date" is payable immediately on demand. 1 Dan. Neg. Inst. §89; Hitchings v. Edmands, 132 Mass. 338; Fenno v. Gay, 146 *Ib.* 118; Teal v. Dukes, 12 Cal. 479; O'Neil v. Magner, 81 *Ib.* 631. To bind the indorsers demand would have to be made in a reasonable time. 3 Rand. Com. Paper, §§1096, 1097. Any suggestion to the contrary founded on *Lynch* v. *Goldsmith*, 64 *Ga.* 42, overlooks the vital distinction between paper payable at bank and paper payable else-

where or at large.· The court held in *Lynch* v. *Goldsmith* that the certificate of deposit was not, on its face, payable at bank but was payable generally, that is, at large and not at any particular place.    My own *obiter* in the· opinion, citing 44 *Ga.* 178, is, if sustained by the citation, which is doubtful, not applicable, because in the present case the notes were indorsed when they were made, whereas my *obiter* was hazarded in a case where the instrument was not indorsed until long after its creation.    And observe how the suggestion contained in the *obiter* is checked by much of the text of Chief Justice LOCHRANE's opinion in 44 *Ga. supra.*

Inasmuch as the declaration alleged facts which were a sufficient excuse for the absence of notice and protest, the amendment offered and disallowed was of no consequence.

3. These directors, being accommodation indorsers and therefore mere sureties relatively to each other as well as to the corporation their common principal, are liable to contribution by virtue of the code, §2151, although the indorsed notes were payable at a chartered bank. The corresponding section in the code of 1868 is section 2123, and the identical question was ruled in *Freeman* v. *Cherry*, 46 *Ga.* 14.

4. Touching the statute of limitations a question of some apparent, though of no real difficulty, arises. Treating the action as founded upon the notes, and as sustainable thereon by reason of the doctrine of subrogation, the suit would be in time, the same having been brought within six years from the date and maturity of the notes.    Code, §2917; *Sublett* v. *McKinney*, 19 Texas, 438.    On the other hand, if the action is to be treated as based upon an account for money paid by the plaintiff at the defendant's implied request and for his use, it is barred because it was not commenced within four years from the time of such payment.    Code, §2918.

There is no doubt that an action of the latter class, had it been brought within four years from the time when the cause of action became complete, would have been maintainable. An action for money paid has been the appropriate one to enforce the right of contribution between co-sureties, ever since that right has received recognition from courts of law. And it is still as appropriate as ever. But is it exclusive? Doubtless, it was the exclusive legal remedy prior to the adoption of the code. Is it so now? The code says, in section 2176, that a surety who has paid the debt of his principal is subrogated, *both at law and in equity*, to all the rights of the creditor; and in the next section it declares that he is entitled to be substituted in place of the creditor to all securities held by him for the payment of the debt. Subrogation, a native of equity but an alien in law, is thus naturalized in the latter and admitted to an equal standing throughout the whole juridical territory. It seems plain that the code intends to effect the substitution by its own vigor, and not leave it to be done by any court or any judicial proceeding. As soon as the debt is paid, the surety paying it is subrogated to the creditor's rights and to any and all remedies for the enforcement thereof, for his own reimbursement. He is substituted in place of the creditor to all securities held by the latter for the payment of the debt. "All securities" will include the identical security, the judgment, promissory note, bill, bond or other contractual instrument, upon which the surety and his co-sureties are bound with and for the principal debtor. Though there is a conflict on the question, the better opinion is that the primary and original security, as well as all others, was embraced in the equitable right of subrogation as it existed prior to the code, irrespective of any statute. Croft *v.* Moore, 9 Watts, 451; Fleming *v.* Beaver, 2 Rawle, 128; Wright *v.* Grover, 82 Pa. St. 80;

Hess's Estate, 69 Pa. St. 272; Howell *v.* Reams, 73 N. C. 391; *Lumpkin* v. *Mills*, 4 *Ga.* 343; *Davis* v. *Smith*, 5 *Ga.* 275; Robinson *v.* Wilson, 2 Madd. 434; Harris on Subrogation, §351; Sheldon on Sub., §137; *McDougald* v. *Dougherty*, 14 *Ga.* 674; Orem *v.* Wrightson, 51 Md. 34, s. c. 34 Am. Rep. 286; Sublett *v.* McKinney, 19 Tex. 438, *supra*: What the code did was to break down the exclusiveness of equity and carry the right into law, so as to make equity and law concurrent and coequal with respect to this subject-matter. It is of the nature of legal rights to need no suit merely to declare their existence or to have the rights specifically awarded or decreed; they are always in possession of the owner, and do not have to be sued for and recovered. Suits founded upon them are brought to satisfy their claims or redress their violation. He who has a legal right of present substitution in place of a creditor, is already substituted; he need not apply to any court for leave to occupy the creditor's place; he need not appeal to any court to ascertain and declare whether the facts of his case entitle him to substitution, nor report to any court that he elects or has elected to be substituted. Were it necessary to do any of these things, he might have to take some step before his right to sue at law for money paid was barred, as was ruled in Rittenhouse *v.* Levering, 6 Watts & Serg. 190. As the code clothes the surety with the legal title to the security which he pays off, no doubt he could recover it or its value in an action against the creditor were the latter to refuse to surrender it on demand. By legal subrogation the paper becomes his property, and the creditor has no right to withhold it from his possession. It is equally certain that he could maintain an action upon it against his principal for reimbursement, or against his co-sureties for contribution, at any time before an action upon it by the creditor would have been barred had the cred-

itor not been satisfied by full payment. Not to allow
the surety as much time to sue as the creditor himself
would have had on the face of the paper, would be only
partial, not complete, subrogation to the creditor's rights.
And observe, that to be substituted for the creditor it is
necessary only that the payment of the debt should be
made by a surety, it matters not whether he be a maker,
indorser, drawer, acceptor, or what not. This was
doubtless overlooked or not brought to the attention of
the court in some of the cases, otherwise it could not
have been suggested, as it was in *Ware* v. *Bank*, 59 *Ga.*
846, that no action is maintainable, upon the bill, by an
accommodation acceptor against the drawer. The re-
verse of this is obviously the true law since the adop-
tion of the code. The form of the contract is imma-
terial where the fact of suretyship exists. Code, §2151;
Sublett *v.* McKinney, 19 Tex. 438, *supra*. Enough has
been said to show that there is no legal reason why such
an action as the present might not be founded directly
on the indorsed notes, and a recovery be had upon the
contracts of indorsement commensurate with the right-
ful claim to contribution. But is this action so founded?
Manifestly it is not. A conclusive answer to the ques-
tion is furnished by the fact that the plaintiff is not the
sole owner of the notes, but only one of several co-
sureties who own them in common. According to the
facts alleged in the declaration, the plaintiff alone did
not pay off the notes but they were paid off by him in
part and by the three others in part, the defendant pay-
ing nothing. Now, the creditor remained the legal
owner until the last dollar was paid; there was no sub-
stitution as to either note until it was fully discharged,
and the substitution which then actually took place was
not the substitution of any one of the paying sureties
in place of the creditor, but a substitution of them all
jointly as owners in common. From thenceforth the

notes stood, with reference to the legal title, just as they would if they were payable on their face to these four persons only, or had been assigned to them by the creditor to whom the payment was made. The law made the assignment, and it was of each note as a whole. There was no carving of them up into fractional parts, and assigning to each new owner his proper fraction of the contracts of indorsement according to the amount contributed by him to the fund which was used to pay them off. Each owner became a part owner of a whole note, not the whole owner of part of the note. This being so, only one action would lie for contribution against the defendant upon his indorsement of either note, and that would be a joint action by all the owners, not an action brought severally by one of them in his own name alone. Most certainly any one of them would have a right to bring the action, with or without the consent of the others; if they did not wish to join, he could force them to do so in order that he might collect enough to cover his proportion of what would be recoverable if all desired to make claim and prosecute the action. He might have to indemnify them against costs, but this would be all they could insist upon. The declaration has annexed to it a copy of the notes and of the indorsements thereon. The indorsements are all in blank, and in the order of place that of the defendant comes next after that of the plaintiff. The declaration is so framed that it could possibly be construed as predicated upon the writings, with the other facts as inducement, or upon the other facts with the writings as inducement. Construed in the latter aspect it sets forth a good and complete cause of action, though one which is barred by the statute of limitations. Construed in the former, it fails to set forth any cause of action on which the plaintiff can maintain such a suit as he has brought, to wit, a several suit for his several

share of the contribution to which the defendant is or might be liable. The one construction involves no strain whatever upon either the letter or substance of the declaration; the other would strain both very greatly, especially as there is no mention of subrogation, and no hint that any right of substitution is sought to be invoked or enforced. Nothing but the mere fact of the lateness of commencing suit puts the mind of the reader upon notice that such a doctrine of the law has or might have a bearing on the merits of the case.

We rule that the action is one for money paid by the plaintiff for the defendant's use, and not one founded directly on the notes and their indorsements; consequently that it is barred.

5. Putting subrogation out of view, the right of each paying indorser to sue severally for his own *pro rata* share of the contribution which the defendant ought to make towards bearing the common burden, is not questionable upon principle. Neither is it upon authority so far as we know. If each pays his own money and thus the debt is discharged by the joint contribution, the fund paid does not thereby become a joint fund as to its ownership. It ought to be no reason why any one should not recover a due allowance for what he has advanced out of his own separate means, that others have made similar advancements out of theirs. Perhaps all might sue jointly if they thought proper, but surely they are not bound to do so. This action was well and rightly brought as to the party plaintiff, on the construction of the declaration which we have just announced, and there was no cause for dismissing it save that it was barred by the statute of limitations. That was sufficient cause.          *Judgment affirmed.*