[No. 3211.]

GUSTAVE DUSSOL, B. AUGUR, HERMAN MICH-
ELS, A. WAPLER, EDWARD CHEVASSUS, Ex-
ECUTOR OF THE WILL OF JOHN E. RENE, DECEASED,
E. CAZALIS, AND I. LANDSBERGER, v. L. G.
BRUGUIERE.

LIABILITY OF SURETIES ON NOTE.—If the maker of a promissory note, as
collateral security for its payment, assigns personal property to the
payee, and, as additional security, third persons sign the note as sure-
ties, the liability of the sureties becomes fixed at the time the collateral
security is exhausted.

LIMITATION OF ACTIONS AS TO SURETIES.—The liability of sureties on a prom-
issory note is not discharged by the Statute of Limitations until four
years after their liability becomes fixed.

JOINT ACTION BY SURETIES.—When several are sureties, and all but one pay
the whole sum for which all became liable, those who pay may main-
tain a joint action for contribution against the one who failed to pay
his proportion, provided they jointly paid the money.

JOINDER OF EXECUTOR WITH OTHERS IN AN ACTION.—If one of several sureties
dies, his executor may be joined with a part of the sureties in an action
against another for a contribution.

WHEN EXECUTOR MAY SUE.—If one of two sureties dies, and his executor
pays all the money for which both became liable, without having the
claim allowed in the Probate Court, he, as executor, can recover the
demand for a contribution from the other surety.

APPEAL from the District Court, Fifteenth Judicial Dis-
trict, City and County of San Francisco.

Haraszthy borrowed ten thousand dollars from Abel
Guy, and gave him his promissory note. The following is
the note, and also the pledge of personal property for its
payment, on the same paper with the note:

"$10,000.                              SAN FRANCISCO, Sept. 29, 1863.

"One month after date, without grace, I promise to pay
to Abel Guy, or order, the sum of ten thousand dollars, for
value received, with interest thereon at the rate of two per
cent. per month from date until paid, payable monthly.
All payments of principal and interest to be made in gold
coin of the United States, at its present standard value, and

in case any legal proceedings be taken hereon, judgment may be rendered to be paid in like gold coin.

(Signed)          " A. Harászthy."

[STAMP.]

"I hereby deposit, assign, and transfer to Abel Guy, the following personal property, stored at my risk and expense, part in his warehouse on Merchant street, No. 408, and part in Sonoma County, at the Buena Vista Plantation, in the cellars of the Buena Vista Vinicultural Society:

| | | | |
|---|---|---|---|
| 600 | bottles of | wine | ............. |
| 60 | gallons | " | ........, .....1867. |
| 520 | " | " | ...............1861. |
| 120 | " | " | .............Port. |
| 120 | " | " | .............White. |
| 100 | " | " | .............White. |
| 75 | " | " | .............Barrel taste. |
| 810 | " | " | .............Red. |
| 190 | " | " | .............Angelica. |
| 135 | " | " | ............ ....White. |
| 30,000 | " | " | .............New. |
| 50 | " | " | .............Brandy, 1861. |
| 650 | " | " | .............12 per ct. ab. pf. |
| 875 | " | " | .............New and 200 working. |
| 180 | " | " | .............Old. |
| 200 | " | " . | .............Vinegar. |

"And all of the white wine, part of which is put in champagne wine—

"As collateral security for the payment of the above promissory note for ten thousand dollars, and interest thereon as therein stipulated; and should default be made in the due payment of the same or any part thereof, I hereby constitute and appoint said Abel Guy my attorney in fact, and empower him or his assigns to sell and dispose of said wines and liquors, or any part thereof, with or without notice, at public or private sale, at his discretion, and to deliver the same to the purchaser or purchasers thereof, and out of the proceeds of such sale to liquidate the said note and interest due, and all expenses thereon, whether the principal be due or not; the balance, if any, to be returned to me; and when any such sale shall be made, the

purchase-money shall be made payable only in gold coin of the United States of America.

       (Signed)                    "A. Haraszthy."

For additional security, plaintiffs Michels, Dussol, Augur, Wapler, Cazalis, Landsberger, and Rene, and the defendant, signed their names on the back of the note below the following: "For additional security after the wines, etc., we, the following, go as mutual sureties."

At the maturity of the note, Haraszthy failed to pay, and Guy, on the 29th day of September, 1865, sold the wines and applied the proceeds on the note, leaving a balance of $3433.75 unpaid. Guy then sued Haraszthy on the note, and on the 13th day of April, 1867, obtained judgment against him. Execution was issued and returned unsatisfied. Guy then demanded of the sureties payment of the balance due. The defendant failed to pay, and the other sureties, on the first day of February, 1869, paid Guy the whole sum, his due. They then commenced this action, on the 19th day of February, 1869, for a contribution. Rene died on the 26th day of December, 1866, and the plaintiff Chevassus became his executor on the 23d of January, 1867. The executor paid the proportion of Rene, for which the estate was liable as surety, without having it presented to him for allowance. The defendant demurred to the complaint, and the court sustained the demurrer, and judgment was rendered for the defendant. The plaintiff appealed.

The other facts are stated in the opinion.

*Robert Y. Hayne*, for the Appellant.

It was not necessary to present the claim to the executor. (*Camp* v. *Bostwick*, 5 Am. R. 673.) The parties were sureties. (*Ashton* v. *Bayard*, 71 Penn. St. 139.) Sureties are not entitled to notice. (*Hough* v. *Etna Life Ins. Co.*, 11 Am. R. 21; *P. F. W. & C. R. R. Co.* v. *Shaeffer*, 8 Am. Law Reg. 110; *Dye* v. *Dye*, 8 Am. Rep. 40.)

*J. M. Burnett*, for the Respondent.

The guarantors had the rights of indorsers, and the failure of Guy to make demand and give notice of the non-payment, released the guarantors. They were entitled to notice on the maker's failure to pay. (*Riggs* v. *Waldo*, 2 Cal. 485; *Pierce* v. *Kennedy*, 5 Cal. 138.)

The plaintiffs should bring separate actions. (*Graham* v. *Robertson*, 2 T. R. 282; *Brand* v. *Boulcott*, 3 B. and P. 235; 1 Parsons on Con. 35.) The plaintiffs paid after the statute had run against the claim. (*Keyes* v. *Fenstermaker*, 24 Cal. 329.)

By the COURT:

1. Michels and the others were sureties—their liability, from the peculiar language in which it is couched, becoming fixed at the time the collateral security was exhausted, that is, September 29, 1865.

2. Being sureties, the Statute of Limitations would not operate to discharge them until the lapse of four years from the 29th of September, 1865, and when, on the first day of February, 1869, the plaintiffs paid the debt to Guy, they did not pay a demand which had been discharged by the operation of the Statute of Limitations, or which, for any reason appearing in the complaint, they were not under obligation to pay.

3. The objection that the plaintiffs should have sued separately is answered by the allegation found in the complaint as amended, that the plaintiffs "jointly laid out and expended a joint sum of money" in making the payment in question.

4. The fact that Chevassus is the executor of Rene, and sues in *autre droit*, while the others sue in their own right, does not amount to a misjoinder of parties *plaintiff*.

5. Nor was it necessary to aver that the claim of Guy had been presented to the executor of Rene. If, as executor, he united in the payment of the claim without requiring its presentment in advance, while he might upon settlement of his accounts with the Probate Court be chargeable with

the sum so paid, it is a matter of no concern to the defendant.

Judgment reversed and cause remanded, with directions to overrule the demurrer to the complaint.