## 18127. DURDEN *v.* YOUMANS *et al.*

Two or more sureties who have paid the debt of their insolvent principal may jointly sue a cosurety for contribution, even where their action is based upon their right to contribution predicated upon the implied promise springing from the payment of the debt alone, and is not based upon notes paid off and transferred to them, where the plaintiff sureties jointly paid the debt, although it was paid by their individual funds.

DECIDED JULY 28, 1927.

Complaint; from Jeff Davis superior court—Judge J. H. Thomas. April 12, 1927.

Lamb, after executing notes which were indorsed by five of his friends, became insolvent and filed a voluntary petition in bankruptcy. Three of the indorsers paid the debt of their principal, had the notes transferred to them, and sued Durden, another indorser, who is also the plaintiff in error, for one fifth of the amount so paid. One of the plaintiffs having died, the suit proceeded, under proper order, in favor of the other two. Paragraph 9 of the petition is as follows: "Petitioners show that the liability of defendant is of equal dignity to the liability of each of petitioners and of W. N. Durden, and that each of petitioners and the said J. L. Durden are liable for the payment of one fifth of the amounts due on said note." A demurrer was filed, one of the grounds of which is as follows: "Defendant demurs specially to the ninth paragraph of said petition and moves the court to strike the same, because the facts therein alleged do not authorize a recovery in the sum and manner here sought to be recovered, for that there is not in said paragraph or elsewhere in said petition any allegation that the petitioners acted jointly or that they used money belonging jointly to them in making the payment of the money due on the alleged note; that thereby they fail to show any reason for maintaining this suit against this defendant." The demurrer was overruled and the case proceeded to trial. The evidence showed that Lamb was insolvent, and that the three indorsers who brought the suit each contributed from his own money one third of the amount to the fund from which the debt was paid. The defendant moved to nonsuit the plaintiffs, "because the evidence showed that the payment made by the petitioners was made by them as individuals, not jointly or with joint funds,

Principal and Surety, 32 Cyc. p. 299, n. 31.

and that they had no right to proceed jointly on an obligation arising from money paid, there being no attempt to sue on the original notes." This motion was overruled, and error is. assigned on the overruling of the demurrer, on the overruling of the motion for a nonsuit, and on the overruling of the motion for a new trial.

*Newton Gaskins,* for plaintiff in error.

*Gordon Knox, I. W. Rountree,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) The real and only point in the case, the point raised by all the assignments of error, is whether or not a joint suit can be maintained by two or more sureties who have paid in full the debt of the principal who is insolvent, against another of the sureties for his proportionate part of the debt, when their right to contribution is predicated upon an implied promise springing from the payment of the debt, and suit is not brought on the notes that they had paid off and had transferred to them. It is well settled in this State that an accommodation indorser is to be considered as a mere surety. Civil Code (1910), § 3541. The original petition presents a case of the payment of the debt by three of the sureties and a claim by them jointly for contribution from another indorser for his pro rata part of the debt. That the cosurety against whom suit is brought is liable for one fifth of the debt can not be questioned. That each of the, plaintiffs is entitled to recover the proportionate part due him by the defendant is also beyond dispute. Civil Code (1910), § 3564. How are the plaintiffs to enforce their right? Two propositions seem settled by the decisions of our courts: First, that a joint suit could have been brought by the plaintiffs had they based their right to recover upon the notes that they paid and which were transferred to them. *Train* v. *Emerson,* 141 *Ga.* 95 (80 S. E. 554, 49 L. R. A. (N. S.) 950). Indeed, this is conceded by counsel for the plaintiff in error. Second, that a joint action can be maintained by sureties who have *paid jointly* the debt. Counsel for the plaintiff in error quotes the following from 32 Cyc. 299 (VI) : "Sureties who have made payment jointly ·may unite in an action against cosureties for contribution, but sureties who have made payment separately can not so unite· at law ;" but the remaining section of this sentence is as follows: "In equity two or more sureties may unite whether or not they paid jointly." In Young *v.* Lyons, 8 Gill (Md.), 162,

the 1st and 2d headnotes are as follows: "Where there are several sureties, and any of them become insolvent, those who pay the whole debt, can compel contribution, in equity, from the remaining solvent sureties, towards the entire debt paid. Where the relief sought is common to all the plaintiffs, and constitutes but one subject-matter of complaint against the defendant, the objection of multifariousness will not hold." In the opinion (p. 167) the court said: "The case here is predicated upon the privity subsisting between all the sureties in one bond, and the money raised by the five complainants, for the payment of it, was, by every reasonable and fair construction, a joint fund. Each having advanced $10,000, amounting in the whole to $50,000, is it not obvious that they must have united together, and agreed, in equal proportions among themselves, to liquidate the precise amount of the bond, reserving against the recusant sureties their claim for contribution? The bond was for a specific sum, and the several amounts contributed by them, made but one fund, which, by the joint action of the parties, satisfied the bond. They now claim that the defendant shall pay his proportion of this sum as the sixth solvent surety, to be afterwards distributed to them according to the respective amount which each had contributed towards the liquidation of the bond. Such, whatever its form, would be the character of the decree in the premises. Suppose the sums advanced by each had been unequal, yet altogether constituting the whole amount, would it not be competent for such of them as had paid more than their just proportion to bring all the solvent parties into chancery, for an adjustment of the account, and an equitable contribution among them? If so, how can it alter or affect the principle of adjustment among these sureties, that the several contributions by the complainants, were equal in amount on the part of each and all of them? It did not the less constitute one fund. All the sureties were jointly bound, and five of them jointly paid the bond. Each was also separately bound for the whole, and the present complainants having paid, between them, the precise amount of the bond, must necessarily have concurred in the arrangement, and constituted a fund to which they are now entitled to call upon the others to contribute, to their relief." See Dussol *v.* Bruguiere, 50 Cal. 456; Adams *v.* DeFrehn, 27 Penn. Sup. Ct. Rep. 184. The second headnote in Julufka *v.*

Matejek, 22 Tex. Civ. App. 384 (55 S. E. 395), is as follows: "In an action against sureties for contribution, all those who have not paid their proportionate part are properly joined as defendants to avoid multiplicity of suits." The second headnote in *Hand* v. *Dexter*, 41 *Ga.* 454, is as follows: "Where complainants claim by the same right, charge a common wrong and pray a common redress, the bill is not multifarious."

In *People's National Bank* v. *Cleveland*, 117 *Ga.* 916 (2) (44 S. E. 24), Justice Fish said: "The rule is well established that where there is one connected interest, centering in the point in issue, or one common point of litigation, so that the joinder tends to prevent multiplicity of suits, unconnected parties may join in an action." In the present case there is one common point of litigation, the right of each plaintiff to recover from the defendant. This is the same "common point" that the plaintiffs would have were they basing their suit on the notes which were paid off and which had been transferred to them. What difference should it make if the right of the plaintiffs is based upon their right to contribution predicated upon an implied promise springing from the payment alone rather than upon the transferred notes? And what difference should it make whether the three who paid the debt each furnished his pro rata part from his individual funds, the three paying the whole debt in one transaction and having the notes transferred to them, or that it was paid with money belonging to them jointly? The sureties who paid the debt were each bound therefor. Even though each furnished his pro rata part of it from his individual funds, did it not then become one fund, a joint fund? In *Hull* v. *Myers*, 90 *Ga.* 686 (5) (16 S. E. 656), Chief Justice Bleckley said: "Putting subrogation out of view, the right of each paying indorser to sue severally for his own pro rata share of the contribution which the defendant ought to make towards bearing the common burden, is not questionable upon principle. Neither is it upon authority so far as we know. . . Perhaps all might sue jointly if they thought proper." While the statement that "perhaps all might sue jointly" was obiter, it showed the bent of his mind, and it is no violent presumption for us to reach the conclusion that if he were determining the question that is now before us he would decide that there could be a joint suit in this case.

Section 5406 of the Civil Code of 1910 is as follows: "The superior courts of this State, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require." Referring to this section and to section 5407, the Supreme Court in *Douglas* v. *Jenkins,* 146 *Ga.* 344 (91 S. E. 50, Ann. Cas. 1918C, 322), said: "These acts have been construed with the utmost liberality, to the end that all the remedies and relief to which the respective parties in any civil cause might be entitled should be applied and accorded in one action." In referring to sections 3567 and 3568 of said code, the Supreme Court, in *Train* v. *Emerson,* supra, said: "Whether the code sections serve to convert the right of substitution from an equitable to a legal right becomes quite immaterial since the enactment of our uniform procedure act, which permits the enforcement of equitable and legal rights in the same action in a court having jurisdiction to administer both." In *Georgia Iron Co.* v. *Etowah Iron Co.,* 104 *Ga.* 399 (30 S. E. 878), Justice Cobb said: "In 1887 the General Assembly passed what is known as the 'uniform procedure act.' Acts 1887, p. 64. By that act the court of equity was abolished, and the superior court now has full power to grant complete relief to all suitors, applying in aid thereof either legal or equitable remedies, or both. All of the plaintiff's rights can now be determined in one action. In the trial of any case before it, the superior court acts either as a court of law or of equity or of both, and uses all the machinery appropriate to the case to which the respective parties are entitled. . . The spirit of the act of 1887 is, that all questions necessary to be decided shall be determined in one action, and the parties therein given such relief, and allowed to invoke such remedies, either legal or equitable, as they are entitled to."

Under the principles announced in the foregoing cases and the facts of the case under consideration, we think that the court was correct in all of its rulings to which exceptions were taken. The policy of the law is to avoid a multiplicity of suits.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*